IN RE INTEREST OF CHERITA W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE, V. CHERITA R., APPELLANT.

541 N.W.2d 677

Filed January 2, 1996. No. A-95-696.

B. Gail Steen for appellant.

James S. Jansen, Douglas County Attorney, and Vernon Daniels for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

## INTRODUCTION

This case involves a child named Cherita and her grandmother who is also named Cherita. For the ease of the reader, we will refer to Cherita W., the juvenile, as "the child." We will refer to Cherita R., the appellant, as "the grandmother." This appeal arises from a detention hearing at which the separate juvenile court of Douglas County found that continued detention of the child was necessary and continued custody of the child in the Department of Social Services (DSS). The grandmother, who is the child's legal guardian,

appeals the trial court's ruling. For the reasons recited below, we reverse, and remand for further proceedings.

### FACTUAL BACKGROUND

The child, born August 16, 1988, was taken into custody on May 12, 1995, and DSS placed her in foster care. Patty Green, a Child Protective Services (CPS) worker, testified at the detention hearing that the child was "picked up" because a child cannot thrive in an environment, such as the one the child was in, where he or she receives negative attention and no nurturing or empathy. A petition was also filed on May 12 that alleged the child is a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) because she lacks proper parental care by reason of the faults or habits of the grandmother.

A detention hearing was held May 24, 1995. The record contains less than 50 pages of testimony. Green testified for the State. Denise T., who is the child's aunt, and the grandmother testified for the grandmother. The evidence shows as follows:

The grandmother has been the child's legal guardian since November 1994. The child apparently suffers from attention deficit disorder (ADD) and hyperactivity. Dr. Kimberly Frank, a psychiatrist that the grandmother retained for herself and the child, made the above diagnosis.

Since February 1995, the family has been voluntarily working with CPS. The family was originally referred to CPS because of the child's report that the grandmother had "spanked" her with a belt. After an investigation, the charge was determined to be unfounded. Debra Miller, a family support worker, visited the home daily for 2 weeks, and Green continued the home visits thereafter.

According to Green, the original issues which led to CPS' involvement with this family remain unresolved. One issue was the grandmother's negative view of the child. Green testified that the grandmother referred to the child as a "liar, a manipulator, [and] a stealer." However, Green admitted that these are accurate descriptions of the child and that she has never heard the grandmother call the child these names or describe her as such in front of the child.

Another issue Green identified was the grandmother's lack of understanding of the connection between ADD and hyperactivity and the child's behavior. According to Green, the grandmother viewed the child's requests for attention and her constant talking as "hassling her." Green admitted that this is a fairly typical complaint of parents of children with ADD, at least initially. Green did not know what specific services had been offered to the grandmother to counsel and educate her regarding ADD. ·

Another of Green's concerns was that the grandmother locked the child in the child's bedroom at night. Apparently, this caused the child to have nightmares. The record does not show the exact circumstances surrounding this situation. Green did not know when this had happened, when the most recent incident was, or if this issue had been resolved.

A fourth concern was the grandmother's health. The grandmother is 66 years old and has arthritis and hypertension. Green testified that the grandmother moves "very, very slowly." This was a concern because of the possible inability of the grandmother to "unlock the door" if there was an emergency.

Finally, Green expressed concern about the child's apparent hoarding of food, which could indicate that she was not getting enough food. Miller had told Green that when the child would ask for a snack, the grandmother would deny it. Although Green thought the child was thin, she had not taken her to, or recommended, a medical doctor to determine if she was malnourished.

Green testified that she spoke with Frank, the psychiatrist, and Frank had concerns about the locking of the child in her room, the grandmother's inability to see a connection between ADD and the child's behavior, and the grandmother's lack of empathy. Green did not know how many sessions Frank had had with the family or what occurred at the sessions.

Green had interviewed the child, and she indicated to Green that she would like to live with her mother. The child thought that this would make the grandmother happy as well. Green also spoke with the child's schoolteachers. They did not indicate that the child was behaving negatively in school.

Green testified that in her opinion the situation was "very, very possibly explosive." According to Green, the child had at some point pushed the grandmother down. Green indicated that this was a "long haul situation" that had been going on for a long time. Green admitted that "[the grandmother] is right, this child's difficult to handle."

The child's aunt Denise and the grandmother denied the allegations that the grandmother has only negative interactions with the child and testified that the grandmother has a loving relationship with the child. The grandmother admitted that she has told the child she is a liar when the child has lied to her. She further testified that when confronted, the child would admit that she lied and state that she did not know why she had lied. The grandmother testified that if the child remains with her they will continue counseling.

In a written order dated May 24, 1995, the juvenile court found that "reasonable efforts," pursuant to Neb. Rev. Stat. § 43-254 (Reissue 1993), were made prior to the child's removal from the home and that return to the home at this time would be contrary to the child's welfare. The juvenile court therefore ordered that temporary custody of the child remain with DSS. This appeal timely followed.

## ASSIGNMENTS OF ERROR

The grandmother assigns that the juvenile court erred when it found by a preponderance of the evidence that the continued detention of the child was necessary and when "it implied through its order of continued detention" that the child could possibly come within the meaning of § 43-247(3)(a) under such allegations as found in the petition.

## STANDARD OF REVIEW

■ An appeal to the Court of Appeals or the Supreme Court from a juvenile court is reviewed de novo on the record. In that review, findings of fact made by the juvenile court may be accorded weight by an appellate court because the juvenile court observed the parties and the witnesses and made findings as a result thereof. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

## ANALYSIS

We address whether the juvenile court erred when it found that continued detention was necessary. At a detention hearing, the State must prove by a preponderance of the evidence that the custody of a juvenile should remain in DSS pending adjudication. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). The circumstances required to be established for continuing to withhold a juvenile's custody from his or her parent or legal guardian pending adjudication are found in § 43-254:

> If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (3) of section 43-248, the court may enter an order continuing detention or placement only upon a written determination that continuation of the juvenile in his or her home would be contrary to the welfare of such juvenile and that reasonable efforts were made, prior to placement, to prevent or eliminate the need for removal and to make it possible for the juvenile to return to his or her home.

See *In re Interest of R.G., supra.*

There appear to be some chronic problems that this family needs to address. This family may well benefit from some type of State intervention, and if adjudication ultimately occurs, it may serve a legitimate purpose. The grandmother does appear to have some difficulty dealing with and understanding the child's behavior and perhaps even interacting positively with her. She may not have always nurtured and empathized with the child. However, we acknowledge that raising children can be difficult and challenging, and raising children with special needs even more so.

The evidence does not show whether any or all of Green's initial concerns have been resolved or are ongoing. Green's testimony regarding her concerns is often conflicting, and there are no references to specific instances at specific times of improper parental care. It is noteworthy that the evidence does not show that since CPS' original decision to provide in-home services, the situation in this home has so degenerated as to support the child's placement outside the home at this point.

There is no event or series of events which enable us to conclude that it would be contrary to the child's welfare to allow her to remain with her grandmother pending adjudication, as required for continued detention pursuant to § 43–254.

The evidence also does not show what specific efforts were made by the State to prevent the need to remove the child from the grandmother's home. Green did not know what services Miller had provided in the first 2 weeks of home visits. Green also did not know what issues Frank was addressing in the counseling that the grandmother had sought for herself and the child. It is also not clear what attempts Green made to resolve her concerns regarding the grandmother.

For these reasons, we find that the evidence does not preponderate in favor of a conclusion that it would be contrary to the child's welfare to remain in the grandmother's home pending adjudication. We also find that the evidence does not preponderate in favor of a conclusion that the State made reasonable efforts prior to the child's removal to prevent the need for her removal. Therefore, we conclude that the State did not meet the requirements of § 43–254 to justify the child's continued detention pending adjudication.

We conclude that the juvenile court erred when it granted the detention order and continued the child's temporary custody with DSS pending adjudication. Since we conclude that the detention order should not have been granted, because the evidence was insufficient, we need not address the grandmother's remaining assignment of error.

For the reasons stated above, we reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.