on appeal are focused solely on the statute of limitations question. Aside from asserting that the Workers' Compensation Court should not have considered Lenz' petition, Central does not challenge the benefits awarded. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014). Therefore, we do not examine the award of benefits on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Workers' Compensation Court.

AFFIRMED.

———————————

In re Interest of Joseph S. et al., children under
18 years of age.
State of Nebraska, appellant, v. Kerri S., appellee.
___ N.W.2d ___

Filed July 3, 2014.    No. S-13-339.

1.  **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

2.  **Constitutional Law: Due Process: Juvenile Courts: Parental Rights: Appeal and Error.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. In reviewing questions of law, an appellate court in termination of parental rights proceedings reaches a conclusion independent of the lower court's ruling.

Petition for further review from the Court of Appeals, Irwin, Pirtle, and Bishop, Judges, on appeal thereto from the Separate Juvenile Court of Douglas County, Elizabeth Crnkovich, Judge. Judgment of Court of Appeals reversed, and cause remanded for further proceedings.

Donald W. Kleine, Douglas County Attorney, and Jennifer Chrystal-Clark for appellant.

Thomas C. Riley, Douglas County Public Defender, Christine D. Kellogg, and Zoë Wade for appellee.

Maureen K. Monahan, guardian ad litem.

Robert McEwen and Sarah Helvey, for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.
## INTRODUCTION
The State of Nebraska appealed an order of the separate juvenile court of Douglas County finding the State had failed to present a prima facie case that the three minor children of Kerri S. were within the meaning of Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2012) because Kerri had substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection to the children, and determining that it was not in the best interests of the children to terminate Kerri's parental rights. The Nebraska Court of Appeals held that Kerri's noncompliance with voluntary State-offered services may not serve as a basis to terminate parental rights.[1] We granted the State's petition for further review. Our opinion discusses when procedural due process is triggered in parental rights termination cases. Ultimately, we reverse the decision of the Court of Appeals and remand the cause for further proceedings.

## BACKGROUND
Kerri is the biological mother of Joseph S., born in January 2000; William S., born in November 2005; and Steven S., born in December 2006.

---

[1] See *In re Interest of Joseph S. et al.*, 21 Neb. App. 706, 842 N.W.2d 209 (2014).

In March 2009, Kerri and her children came to the attention of the Department of Health and Human Services (DHHS) due to concerns about Kerri's drug use and improper supervision of the children. Melissa Misegadis, a family permanency supervisor with Nebraska Families Collaborative (NFC), testified that she had been involved with the family since July 2010. Misegadis testified that the children had been returned to Kerri's care in February 2010, but that they returned to foster care shortly after Misegadis became involved in the case. The children remained out of Kerri's care for exactly 1 year. Kerri received drug testing and mental health treatment, among other services. In the fall of 2010, Kerri tested positive for cocaine. Misegadis testified that Kerri did not always consistently participate in services offered by DHHS, but that ultimately, Kerri completed a court-ordered and court-monitored plan. The children were returned to Kerri's care, and that case was closed in November 2011. The case had been open for approximately 32 months.

In January 2012, DHHS received reports that Kerri had left the children with a relative and was unable to be reached. Calls to the DHHS hotline again expressed concerns that Kerri was not properly supervising the children and might be using drugs. Kerri indicated a willingness to work with DHHS on a voluntary basis, and the case was transferred to NFC. Kerri began voluntary services which included drug testing and temporary placement of the children into foster care for a period of 180 days. During the 180-day period, Kerri was not consistent in completing the requested drug testing, participating in weekly visitation with the children, or attending therapy. Kerri tested positive for amphetamines or methamphetamine three times and admitted to using marijuana one time.

Another family permanency specialist with NFC testified that she conducted a drop-in visit to Kerri's home 9 days before the children were to return home. The visit revealed the home was in disarray, with graffiti on the walls, empty alcohol bottles around the home, and numerous unmade beds without sheets. During the visit, there were approximately five adults in the home who appeared to be residing there, but whom Kerri described as friends there to help her get the home ready for

the children's return. NFC received information from relatives of Kerri, as well as information from law enforcement, which raised additional concerns about Kerri's ability to care for the children safely. NFC made the decision to request that DHHS be granted temporary custody of the children.

On August 9, 2012, the State filed a motion for temporary custody. The juvenile court granted DHHS temporary custody of the children the same day. After August, Kerri became increasingly difficult to locate and her participation in voluntary services was sporadic. Kerri began living with a friend and was unable to attend regular visitation with the children.

In December 2012, the State filed an amended petition. Counts I and II of the amended petition alleged that the children were at risk of harm under Neb. Rev. Stat. § 43-247(3) (Reissue 2008) due to Kerri's drug use, failure to participate in voluntary services, failure to provide safe housing, and failure to provide proper parental care. Counts III and IV alleged that Kerri had substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection and sought termination of Kerri's parental rights under § 43-292(2).

The juvenile court held a hearing on March 13, 2013. After the State presented evidence, Kerri moved to dismiss. The court denied the motion as to counts I and II, finding the State had proved by a preponderance of the evidence that the children were within the meaning of § 43-247(3) and therefore within the jurisdiction of the court. However, the court granted the motion to dismiss as to counts III and IV, finding the State had failed to present a prima facie case that termination of Kerri's parental rights was appropriate under § 43-292(2). The court ordered the children to remain in the temporary custody of DHHS.

The State appealed, arguing it had proved by clear and convincing evidence that Kerri's parental rights should be terminated pursuant to § 43-292(2) because Kerri had substantially and continuously neglected and refused to provide necessary parental care and that termination was in the children's best interests.

On appeal, the Court of Appeals found that Kerri had been denied due process of law and therefore held that Kerri's noncompliance during the voluntary phase of the case was not acceptable evidence to be used to satisfy the requirements of § 43-292(2).[2] We granted the State's petition for further review.

## ASSIGNMENT OF ERROR

The State argues that the Court of Appeals erred in finding that the State failed to present clear and convincing evidence that termination of the parental rights of Kerri was appropriate and in the best interests of her minor children.

## STANDARD OF REVIEW

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.[3]

[2] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. In reviewing questions of law, an appellate court in termination of parental rights proceedings reaches a conclusion independent of the lower court's ruling.[4]

## ANALYSIS

In its petition for further review, the State maintains that it presented sufficient evidence to the juvenile court to prove by clear and convincing evidence that termination of Kerri's parental rights was appropriate and in the children's best interests. The Court of Appeals determined that Kerri was denied due process of law, and therefore held that evidence of Kerri's

---

[2] *Id*.

[3] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[4] *In re Interest of Davonest D. et al.*, 19 Neb. App. 543, 809 N.W.2d 819 (2012).

noncompliance with voluntary services could not be used to satisfy the State's burden of proof.

We have repeatedly held that "procedural due process is applicable to a proceeding for termination of parental rights."[5] However, we have never stated precisely what due process is required in a termination proceeding, instead noting that due process is "necessarily and inherently flexible."[6]

In *In re Interest of L.V.*,[7] we held that due process in a termination of parental rights proceeding requires, at a minimum,

> notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

In *In re Interest of Kantril P. & Chenelle P.*,[8] we noted that the requirements set forth in *In re Interest of L.V.* were not exclusive.

The record in this case shows that from the time the petition to adjudicate the children was filed on August 9, 2012, Kerri was afforded adequate procedural due process. The juvenile court ordered the children placed in the temporary custody of DHHS on August 9. The record shows that on August 22, Kerri's counsel appeared in juvenile court for a detention hearing, which was continued. A guardian ad litem for the children had also been appointed by this time. At a detention hearing September 19, Kerri was informed of her rights pursuant to Neb. Rev. Stat. § 43-279.01 (Reissue 2008). The State sought

---

[5] *In re Interest of L.V.*, 240 Neb. 404, 412, 482 N.W.2d 250, 256 (1992).

[6] *Id.* at 413, 482 N.W.2d at 257.

[7] *Id.* at 413-14, 482 N.W.2d at 257.

[8] *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999).

continued custody of the children, and Kerri did not resist the State's request. A case settlement conference was held on October 16. The juvenile court set a date for an adjudication hearing and ordered mutual and reciprocal discovery.

The amended petition, seeking termination of Kerri's parental rights, was filed on December 19, 2012. Kerri's attorney was served with the petition as well as a copy of the State's motion for service by publication. The court allowed service by publication and indicated it would hear the amended petition on March 13, 2013. Kerri filed a motion to strike the amended petition, alleging that it did not provide her with adequate time to prepare defenses to the additional allegations. After a hearing, the motion was denied. Kerri then filed a motion to bifurcate, which was also denied. The denial of these motions was not raised on appeal. Kerri was present, with counsel, at the adjudication hearing. She was permitted to cross-examine the State's witnesses and present evidence. Nothing in the record indicates that she was denied an impartial decisionmaker.

The record demonstrates that Kerri was afforded all of the due process requirements set forth in *In re Interest of L.V.* However, the guardian ad litem and amicus curiae cite federal case law and suggest that Kerri was entitled to additional procedural due process in January 2012, when the State initiated Kerri's participation in voluntary services. Although we agree with Kerri that use of coercive tactics by the State could trigger due process requirements prior to the formal filing of a petition in court, we find no due process violation in this case.

In *Croft v. Westmoreland County Children and Youth*,[9] the Third Circuit found a violation of a father's substantive and procedural due process rights where a caseworker gave the father an ultimatum: leave his home and daughter for the duration of the county's investigation into sexual abuse, or the caseworker would take the child physically from the home that night and place her in foster care. In finding that the ultimatum had violated the father's rights, the court emphasized

---

[9] *Croft v. Westmoreland County Children and Youth*, 103 F.3d 1123 (3d Cir. 1997).

that the caseworker lacked objectively reasonable grounds for believing any abuse had occurred. Similarly, in *Starkey v. York County*,[10] a Third Circuit district court found a procedural due process violation where, after bringing their son to a hospital with a head injury, the parents were not informed of their right to an attorney or a hearing when given an ultimatum: leave their home and not have unsupervised contact with their children during an abuse investigation, or the county would seek an emergency court order and take custody of the children.

*Croft* and *Starkey* are distinguishable from the case at bar. There is no evidence in the record that Kerri was given an ultimatum when the State offered voluntary services in January 2012. In other words, the record does not show that the coercive tactics used by state officials in *Croft* and *Starkey* are present in this case. Kerri has not argued that her compliance was not voluntary, and we will not make such an assumption. Additionally, Kerri has never argued that the State lacked reasonable grounds for believing she was unable to properly care for the children in January 2012, and the record does not support such a finding.

In *Starkey*, the court rejected the holding of another case, *Dupuy v. Samuels*,[11] in which the Seventh Circuit found no due process violation where the parents had their children removed from the home without first being afforded a hearing. While the Seventh Circuit acknowledged that there is some coercive nature to any threat of formal removal proceedings, it found this to be insufficient to invalidate the parents' consent, noting the situation was similar to a plaintiff's threatening to proceed to trial in order to induce a defendant to settle a case. The Sixth Circuit explicitly adopted the reasoning of *Dupuy* in *Smith v. Williams-Ash*.[12] However, the Sixth Circuit distinguished that case, involving parents who voluntarily consented to have their children removed from their home due to unsanitary

[10] *Starkey v. York County*, No. 1:11-cv-00981, 2012 WL 9509712 (M.D. Penn. 2012) (memorandum opinion).

[11] *Dupuy v. Samuels*, 465 F.3d 757 (7th Cir. 2006).

[12] *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008).

conditions, from *Dupuy* because the court found there were material questions of fact involving whether the social worker improperly threatened that the parents would go to jail if they withdrew from the voluntary plan.[13] We find *Dupuy* and *Smith* persuasive and conclude that there is no evidence in this record demonstrating that Kerri was coerced into accepting or continuing with voluntary services through NFC.

We have said that "'there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent.'"[14] There was no such plan here, and the State did not seek to terminate Kerri's parental rights based on her failure to comply with a court-ordered plan. Instead, the State sought to terminate based on evidence that Kerri had substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection. Thus, evidence of Kerri's noncompliance with voluntary State-offered services, as well as evidence from the prior case with DHHS, closed less than 3 months before DHHS again received concerning information and Kerri began voluntary services with NFC, was relevant to the State's case.

We find that the State made at least a prima facie case that the requirements of § 43-292(2) were met due to a 4-year history of drug use and improper supervision. On remand, the juvenile court should consider all of the evidence presented to determine whether the State has demonstrated by clear and convincing evidence that termination of Kerri's parental rights is appropriate and in the best interests of the children.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is reversed and this case is remanded to the juvenile court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

---

[13] *Id*. (Gilman, J., dissenting).

[14] *In re Interest of Joshua M. et al.*, 251 Neb. 614, 632, 558 N.W.2d 548, 561 (1997) (quoting *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990)).