IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF BRENDON J.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF BRENDON J., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

RONNIE JO J., APPELLANT.

IN RE INTEREST OF BRENDON J., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BRENDON J., SR., APPELLANT.

Filed February 24, 2015.    Nos. A-14-739, A-14-832.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellant Ronnie Jo J.

Monica Green Kruger, of Law Offices of Monica Green Kruger, P.C., L.L.O., for appellant Brendon J., Sr.

Donald W. Kleine, Douglas County Attorney, and Amy N. Schuchman for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

INTRODUCTION

Brendon J., Sr. and Ronnie J. are the biological parents of Brendon J., Jr. Ronnie appeals the order entered by the separate juvenile court for Douglas County on July 24, 2014, finding it was in the best interests of the minor child to be placed in the care and custody of the Nebraska Department of Health and Human Services with placement to exclude her home. Brendon Sr. appeals the order entered by the separate juvenile court for Douglas County on August 15, 2014, finding that the child should continue in the care and custody of DHHS with placement to exclude his home, which he shares with Ronnie. For the purposes of this appeal, we have consolidated the two cases, and for the reasons that follow, we affirm.

BACKGROUND

Brendon Sr. and his wife Ronnie are the biological parents of Brendon Jr., who was born in July 2014. On July 11, the State of Nebraska filed a petition alleging Brendon Jr. came within the meaning of Neb. Rev. Stat. §43-247(3)(a) and was lacking proper parental care by the reason of the faults or habits of Ronnie, and that the child was at risk for harm. The petition alleged Ronnie's parental rights to three prior children were terminated involuntarily in 2010, 2012, and 2013. The petition also alleged Ronnie was unable to reunify with one child in 2008 and 2009, and another child in 2010 and 2011, despite being provided with rehabilitative services. The petition alleged that due to the substantial and continuous or repeated neglect of Brendon Jr.'s older siblings and the involuntary termination of Ronnie's parental rights to those children, reasonable efforts to preserve and reunify the family were not required under the Nebraska Statutes. The petition noted that Brendon Sr. was the custodian of the child, and he was hospitalized at that time at the University of Nebraska Medical Center.

On July 11, an ex parte motion for temporary custody was also filed with an accompanying affidavit written by Ramona Laboy, a child and family services specialist with DHHS. The motion sought placement of the child in the temporary custody of DHHS, with placement to exclude the home of Ronnie. Laboy's affidavit set forth the history of Ronnie's involvement with DHHS. The affidavit stated that Ronnie had failed to correct the conditions which led to the adjudication with the child in at least one prior case and that she failed to participate in court-ordered services or maintain contact with the child.

The juvenile court issued an ex parte order for immediate custody on July 11, 2014 finding that pending further hearing on the issue, the need for placement and detention existed and were of urgent necessity for the protection of Brendon Jr. The court placed the child in the temporary custody of DHHS with placement to exclude Ronnie's home.

A protective custody hearing was held on July 23, 2014. Ronnie denied the allegations of the petition, and the State asked that the child remain in the care and custody of DHHS. The State also requested that the options for placement exclude Ronnie's home. The state called Laboy to testify and her affidavit was received as Exhibit 1 with no objection.

On July 24, the juvenile court issued an order finding that Brendon Jr. should remain in the custody of DHHS, and placement should exclude Ronnie's home. The court considered the

credibility of Laboy's testimony that she believed the child would be at risk of harm if returned to his mother's care because of the prior unsuccessful rehabilitative efforts. The court also considered Ronnie's level of participation in prior cases, and her history of "inadequate parenting." The court noted that based on the evidence adduced, the State met the burden of showing that, without intervention, the child was at risk for harm. The order stated that, at that time, the court had no jurisdiction over the identified father, Brendon J. Sr.

On August 11, 2014, the State of Nebraska filed a petition alleging that Brendon Jr. came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) due to the faults and habits of Brendon Sr., and that the child was at risk for harm. The petition alleged that Brendon Sr. resided with Ronnie who had been involved with Douglas and Lancaster County court systems for five separate cases involving parental neglect, and that Brendon Sr. refused to separate from her or divorce her. The petition alleged Ronnie was unfit to provide proper parental care for Brendon Jr., and he was ordered to remain in foster care to exclude her home. The petition alleged that Brendon Sr. appeared to suffer from cognitive delays or difficulties, and that he demonstrated a lack of understanding as to why Ronnie was unfit to provide care for Brendon Jr.

An ex parte order for immediate temporary custody was issued on the same day placing Brendon Jr. in the custody of DHHS. The court found that reasonable efforts had been made to prevent removal which included an investigation by CPS/NFC and interviews and assessments. The order stated that Brendon was to be placed in foster care or other appropriate placement, excluding the home of Brendon Sr.

A protective custody hearing was held on August 14, 2014. The State asked that the child remain in the care and custody of DHHS, and that the options for placement exclude Brendon Sr.'s home. DHHS and the guardian ad litem joined in the State's request for continued detention. Brendon Sr. objected to the continued placement of the child within the care and custody of DHHS.

The State requested that the hearing be continued as all of the State's witnesses were unavailable to testify. Brendon Sr. objected to the request for the continuance. The State offered the affidavit of Molly Kreji, dated July 21, 2014, in support of the request for continued detention. The exhibit was received and no additional evidence was offered by any party.

The separate juvenile court for Douglas County found that the minor child should remain in the department's custody, and placement should exclude Brendon Sr.'s home. The court's order stated that it would be contrary to the health, safety, and welfare of the minor child to return to the home of Brendon Sr. The court stated that Brendon Sr.'s "mental health is limited such that he has little insight or ability to provide for his child's safety and well-being nor does he understand why his son was removed from the parental home."

## ASSIGNMENTS OF ERROR

Ronnie asserts the juvenile court erred in finding continued detention of Brendon Jr. in an out-of-home placement pending adjudication was necessary.

Brendon Sr. asserts the evidence was insufficient to find that the minor child, Brendon Jr., would be at risk of harm if returned to the care of the father. He also asserts the juvenile court erred in determining that reasonable efforts had been made to maintain the minor child in the

parental home prior to removal, and that reasonable efforts had been made to return the child to the home after removal.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Joseph S.,* 288 Neb. 463, 849 N.W.2d 468 (2014).

## ANALYSIS

*Ronnie's Appeal.*

Ronnie asserts the juvenile court erred in finding it was necessary to continue detention of Brendon Jr. in an out-of-home placement pending adjudication.

Ronnie cites case law which states "where a child has been removed, the juvenile court may enter an order continuing detention or placement only upon a written determination that continuation of the juvenile in his or her home would be contrary to the welfare of such juvenile and that reasonable efforts were made to prevent or eliminate the need for removal and to make it possible for the juvenile to return to his or her home. (Appellant's brief at 6 citing *In re Cherita W.,* 4 Neb. App. 287, 541 N.W.2d 677 (1996); Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2010). She asserts the State failed to present evidence of any risk Brendon would face if returned to her care; thus the juvenile court erred in ordering his continued placement out of the home on July 24, 2014.

The State was not obligated to show that reasonable efforts had been made in this case as the Nebraska Statutes do not require reasonable efforts to preserve and reunify the family if the court has determined that the parental rights of the parent to a sibling of the juvenile have been terminated involuntarily. Neb. Rev. Stat. § 43-283.01(4)(c). Therefore, the burden was on the State to prove only that the child was at risk for harm.

In *In re Interest of M.B. and A.B.,* 239 Neb. 1028, 480 N.W.2d 160 (1992) the Nebraska Supreme Court stated "if evidence of the faults or habits of the parent or custodian indicates a risk of harm to a child, the juvenile court may properly take jurisdiction of that child, even though the child has not yet been harmed or abused."

Although there was no evidence in this case that the infant had been harmed or abused, there was evidence that Ronnie has a history with DHHS including removal of five children from her home. She has demonstrated a lack of participation in services she was provided which led to the involuntary termination of her parental rights to three different children, each in separate cases.

Laboy testified that at the time of the hearing she had become aware that Ronnie had tested negative for controlled substances, the home was deemed safe and stable, and the child's meconium drug screening was negative for controlled substances. Nonetheless, she testified that in her opinion Brendon Jr. was at risk for harm in Ronnie's home. Laboy also testified that when determining whether a child is in need of removal she ordinarily considers factors including: the parent's prior history with the department; the parent's current circumstances; the parent's

willingness to participate in rehabilitative services; whether the parent is using controlled substances; whether the parent can provide safe and stable housing; and, whether there are other individuals in the home that could provide informal support.

Ronnie correctly states that there was no specific evidence regarding what the issues were in the prior removal and termination cases. However it is undisputed that her parental rights to those children were terminated, and involuntary termination of her parental rights in three separate cases would not have happened without cause. Further, there is evidence that she failed to participate in the rehabilitative services provided and failed to maintain regular contact with at least one child during the pendency of a previous case.

Upon our de novo review of the record, we find the juvenile court did not err in finding the continued detention of the infant pending adjudication was proper as there was evidence that, without intervention, the child would be at risk for harm.

*Brendon Sr.'s appeal.*

Brendon Sr. asserts the evidence was insufficient to find that Brendon Jr. would be at risk of harm if returned to his father's care.

Continued detention pending adjudication is not permitted under the Nebraska juvenile code unless the State can establish by a preponderance of the evidence at an adversarial hearing that such detention is necessary for the welfare of the juvenile. *In re Interest of Damien S.,* 19 Neb. App. 917, 815 N.W.2d 648 (2012).

This court has stated that in order to demonstrate that a pre-adjudication detention should continue, the State must prove by a preponderance of the evidence that the custody of the juvenile should remain in the care of the department pending adjudication. *In re Stephanie H.,* 10 Neb. App. 908, 639 N.W.2d 668 (2002).

As stated above, the juvenile court found that Brendon Jr. was at risk for harm if he were to continue to reside in the home of his mother, Ronnie. Ronnie and Brendon Sr. are married and reside together. Evidence was presented to the court that Brendon did not intend to separate himself from Ronnie. The State alleged that Brendon's residence with Ronnie was an ongoing concern because of her history of child neglect which resulted in termination and relinquishment of her parental rights to five of Brendon Jr.'s older siblings. For so long as the child is at risk for harm if placed with his mother, the child is also at risk for harm if placed with his father because they reside in the same home.

Further, the State alleged that Brendon Sr.'s cognitive abilities were in question and the State was concerned that his "borderline intellectual function" would prevent him from safely parenting a newborn. It was alleged that he receives social security disability benefits for cognitive disabilities, learning disabilities, borderline intellectual functioning and a low IQ. No evidence was presented to the contrary. Upon our de novo review, we find the evidence was sufficient to find that Brendon Jr. was at risk for harm if returned to Brendon Sr.'s care.

Brendon Sr. also asserts the juvenile court erred in determining that reasonable efforts had been made to maintain the minor child in the parental home prior to removal.

As discussed previously, we found that the State was not required to make reasonable efforts to preserve and reunify the child with Ronnie because her parental rights to multiple siblings of the minor child in this case were involuntarily terminated. See Neb. Rev. Stat.

§ 43-283.01(4)(c). Ronnie continues to reside with Brendon Sr. which, as discussed above, presents a safety risk to the child in the home, and detention outside of the home was justified.

We find any reasonable efforts provided to Brendon Sr. to prevent removal of the child from the home would have been futile, as there is evidence that he does not plan to separate himself from Ronnie. However, reasonable efforts continue to be made to reunify Brendon Sr. with Brendon Jr., as he was provided with services including supervised visitation to promote bonding during the child's continued detention. Under the circumstances, we find reasonable efforts are being provided to Brendon Sr. and the district court did not err in finding continued detention, pending adjudication was in the child's best interests.

## CONCLUSION

Upon our de novo review, we find the juvenile court did not err in finding continued detention, pending adjudication, was necessary as the child was at risk for harm in the parents' home.

AFFIRMED.