IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF ESTRELLITA L.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF ESTRELLITA L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLANT,

V.

JOSE L. ET AL., APPELLEES.


Filed June 30, 2015.    No. A-14-1031.


Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Donald W. Kleine, Douglas County Attorney, and Malina Dobson for appellant.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellee Jose L.

William R. Harris for appellee Luxarelli G.

Douglas J. Peterson, Attorney General, and John M. Baker, Special Assistant Attorney General, for appellee Nebraska Department of Health and Human Services.

Jacqueline Foland-Siece, guardian ad litem.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

The State of Nebraska appeals from the order of the Separate Juvenile Court of Douglas County, which denied its motion to establish guardianship through alternative disposition in this

- 1 -

juvenile case involving Estrellita L. Because continued efforts toward reunification are in Estrellita's best interests, we affirm.

BACKGROUND

Jose L. and Luxarelli G. are married to one another and are the parents of Estrellita and five other children. Estrellita was born in August 2006 and is the only child involved in this juvenile court case. When Estrellita was 2 years old, she was severely burned over a majority of her body while in her parents' custody. These burns occurred during a family wedding in California when Estrellita fell head first into a pot of hot soup that was sitting on the floor. She sustained scalding burns over two-thirds or 70-percent of her body, has undergone extensive medical treatment for her burns, and faces ongoing therapy and at least 2-3 surgeries per year until she reaches age 21. She was initially placed in foster care following her release from a rehabilitation hospital in February 2010. In March, she was placed with her current foster mother, a pediatrician involved in her care, and has remained continuously in that placement since that time.

On June 15, 2010, the State filed a petition in the Separate Juvenile Court of Lancaster County alleging that Estrellita came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) in that she lacked proper parental care by reason of the fault or habits of her parents. Specifically, the State alleged that (A) on February 15, 2010, Estrellita was released from Madonna Rehabilitation Hospital after having been hospitalized for severe burns on the majority of her body, which occurred while in her parents' custody; (B) during Estrellita's hospitalization, Madonna staff documented inappropriate comments or behaviors, lack of training, lack of appropriate residence, or a lack of supervision on the part of Estrellita's parents that made it unsafe for her to return to the parental home upon her discharge from the hospital; (C) in February 2010, juvenile court proceedings were started in Douglas County, Estrellita was placed in the custody of the Nebraska Department of Health and Human Services, and upon her release from Madonna, she was placed into foster care; and (D) as of June 16, 2010, the petition filed in Douglas County had been dismissed, Estrellita remained in foster care in Lancaster County, and her parents had not demonstrated an ability to provide a safe and stable home environment given her heightened medical needs and ongoing medical therapy and treatment. Also on June 15, the State filed an ex parte motion for temporary custody of Estrellita, which was granted by the juvenile court.

Estrellita was adjudicated under § 43-247 (3)(a) in July 2010. Jose and Luxarelli entered admissions to the allegations in counts I(A), (C), and (D) of the petition and the juvenile court found those allegations true by a preponderance of the evidence. Count I(B) of the petition was dismissed pursuant to a plea agreement of the parties. In that same order, final disposition of the case was transferred to the Separate Juvenile Court of Douglas County.

On April 17, 2013, the State filed a motion to establish guardianship through alternative disposition. In this motion, the State alleged that the parents had not demonstrated the ability to provide for Estrellita's medical needs, that it would be contrary to Estrellita's health, safety, and welfare to return her to her parents' care at that time, that reasonable efforts had been made at reunification, and that it was in the Estrellita's best interests to appoint the foster mother as her guardian. The State asked the court to determine that guardianship was the permanency goal for Estrellita and that reasonable efforts were no longer necessary, to place her in the foster mother's

custody while maintaining the court's jurisdiction, and to relieve the Department of any further responsibility in the case.

Trial on the State's motion was held over the course of 17 days between August 8, 2013 and June 27, 2014. During that time, the juvenile court heard testimony from a plastic surgeon, three nurses, three occupational therapists, two case managers, a case supervisor, a pediatrician, two psychologists, the foster mother, the parents, a licensed independent mental health practitioner, three visitation workers, a representative of the Nebraska Foster Care Review Office, and a physical therapist. The bill of exceptions on appeal contains more than 2,000 pages of testimony and includes 9 volumes of exhibits. We have conducted a thorough de novo review of the record before us, but given its massive size we have only generally summarized the evidence brought forth before the juvenile court. We have addressed specific portions of the evidence relevant to the State's assignments of error in greater detail in the analysis section below.

The evidence generally shows that as a result of the burns Estrellita sustained when she was 2 years old, she has had multiple surgeries, including, but not limited to skin grafts and that she will need continued surgical care as she grows, with surgeries needed to provide flexibility for her joints and to avoid tearing of her skin. She will also require surgeries to accommodate her growth and body development from a child to a young woman. Estrellita had to be fed through a G-tube button for a period of time, and her surgical aftercare has included occupational, speech, and physical therapies. Estrellita has also required individual mental health therapy and has participated in family therapy with her parents. The record shows that, to ensure the effectiveness of Estrellita's surgeries and to ensure her physical and mental health, her caregivers need to be proficient in a wide variety of skills, including stretching, splinting, application and administration of medication, and G-tube feeding. Her caregivers also need to be able to address any problematic changes in her health and seek appropriate medical care as necessary. Estrellita's future surgeries will require her caregivers to learn and become proficient in new skills and to recall and apply previously learned skills.

During the course of this case, Estrellita's family has been provided with an array of services including bilingual case manager; interpreter services; G-Tube training and home healthcare assistance with G-button training; occupational, physical, and speech therapy; supervised visitation; assistance with starting school and an Individualized Education Plan; psychological evaluations; mediation; a bilingual mental health therapist; individual and family therapy; and transportation assistance.

Estrellita has been placed with her current foster mother, who is a pediatrician, since March 2010. The record shows that the foster mother is proficient in providing Estrellita's care and has attempted to create as normal a life as possible for Estrellita. She has helped Estrellita become involved in Girl Scouts, gymnastics, soccer, volleyball, and piano lessons; has included Estrellita in her family's travels and vacations, over the parents' objections; and has provided Spanish language lessons for Estrellita. The record shows that Estrellita has a strong bond with and loves both her foster mother and her parents, all of whom reciprocate her love.

Much of the evidence at trial focused on Jose and Luxarelli's difficulties in learning and retaining knowledge of the skills needed to care for Estrellita and administer her at-home therapies. In many instances they have been slower than ideal in learning new skills and have needed

considerable cuing with respect to both previously learned and new skill sets. Nonetheless, the record shows that they have been engaged in learning to care for Estrellita and in participating in requirements imposed by the juvenile court and that they have made good progress in many areas. The record also shows that the reunification process in this case has been complicated by the fact that Jose and Luxarelli, who only speak Spanish, live in Omaha with their other children; Jose works in Iowa and leaves home in the early mornings; Estrellita is placed in Lincoln with her foster mother; and much of her medical and other therapeutic care has occurred in Lincoln.

Jose's testimony included evidence about his immigration status and criminal issues. Jose is originally from Mexico, has had a valid work permit since 2010, and has maintained legal employment throughout the juvenile court case. He testified, however, that he was in removal proceedings before the immigration court. Apparently, the removal proceedings were triggered by his arrest for driving without a license. Jose applied for cancellation of removal based on the amount of time he has lived in the United States, the number of United States citizen children he has, and the fact that it would cause them hardship if he were deported. Jose testified that following an immigration hearing in January 2014, the case was closed and would remain closed or on hold until there was a resolution of the juvenile court case. Jose testified that he was on probation at the time of Estrellita's accident for driving under the influence of alcohol. He also testified that he was arrested in April 2009 for a domestic violence incident. He was incarcerated for about 15 days or three weeks during the summer of 2013. The reason for this incarceration is somewhat unclear, but apparently it related to the vacation of a judgment to allow for withdrawal of guilty plea in a DUI case from 2006 and not to anything Jose did while the juvenile case has been pending. Jose has previously received treatment for alcohol abuse, has completed a drug court program, and denied using any alcohol or drugs since Estrellita's accident. We also note that several witnesses testified about inappropriate or threatening statements Jose made early in the case proceedings to those participating in Estrellita's care and treatment and that he grabbed Estrellita too roughly at one point, but no witnesses testified about such behavior occurring since that time.

With respect to whether guardianship or reunification is in Estrellita's best interests, the evidence was split with the physical health professionals generally favoring guardianship and the mental health professionals generally favoring reunification. The Department also favors reunification rather than guardianship, at least at this point in the case. One of the psychologists who testified recommended reunification as being in Estrellita's psychological best interests based on factors including Estrellita's attachment to her parents and desire to return home again. This witness expressed concern about damage to Estrellita and the effect on her and her cultural identity if the permanency objective were changed to guardianship. Similarly, Estrellita's current mental health therapist supported reunification as a permanency objective based on the strength of the relationship between Estrellita and her parents. She expressed concern about the foster mother's attitude toward the parents. In contrast, neither Estrellita's plastic surgeon nor her pediatrician supported permanency with the parents. These witnesses expressed concerns including Jose and Luxarelli's continued inconsistency in addressing all of Estrellita's medical care and difficulty in adapting to new therapies.

On October 9, 2014, the juvenile court entered an order, denying the State's motion. In a lengthy opinion, the court addressed the issues of whether under Neb. Rev. Stat. § 43-283.01(3)

(Cum. Supp. 2014) reasonable efforts had been made to effect a plan of reunification, such that no further efforts were required, whether a permanency objective of guardianship was consistent with Estrellita's best interest, safety, and welfare, and if so, whether the foster mother should be appointed as Estrellita's guardian and the Department relieved of responsibility. In determining that sufficient reasonable efforts had not been made, the court stated:

> From the exhibits, testimony, and review of the court's orders, the court finds that there has been a reasonable amount of time and a reasonable amount of efforts to bring about the permanency objective of reunification. However, the reasonable efforts as they relate singularly to 'time' are meaningless if the efforts and the opportunities have been compromised by external factors. The court finds that there has been a lack of reasonable opportunity and this lack of opportunity has diluted the effectiveness of the reasonable efforts. Accordingly, it must follow that there has been a lack of reasonable efforts for the reasons set forth below.

In support of its finding that sufficient reasonable efforts had not been made, the court cited "constant ongoing disagreements that have required multiple, protracted evidentiary hearings to resolve." This concern related primarily to the length of time it took to implement the court's order authorizing overnight visits. The court also noted testimony from one visitation worker, who observed that much of the time during the visits she supervised was taken up with medical appointments, therapy, and homework, leaving little time for pure visitation and that she was never given clear guidance as to what she was to be looking for during visits. The court also noted barriers, including the geographical location of the parents, Estrellita, and the various services; the fact that the parents and the foster mother have not always been able to work together as a team; and the family's limited resources. The court noted the bond between Estrellita and her parents, stating that "the evidence clearly establishes that this relationship must be preserved and built upon." The court expressed concern over how this would occur without services provided by the Department. The court also stated that the relationship between Estrellita and her parents must be fostered for cultural reasons, and it stressed the need to foster the relationship in such a way that Estrellita was able to communicate with her parents, siblings, and extended family. Finally, the court stated its agreement with Estrellita's mental health therapist that Estrellita's physical and mental health needs were connected and could not be separated.

The juvenile court rejected the permanency objective of guardianship and denied the State's request that the Department be relieved of further responsibility in the case. The court ordered the Department to identify a plan to assess possible relocation of the parents and Estrellita's siblings from Douglas County to Lancaster County (where the foster mother and Estrellita reside) or, in the alternative, the extent of possible medical care to be conducted in Douglas County. The court also ordered the Department to assess whether it was in Estrellita's best interest, safety, and welfare to transition to a foster home in Douglas County and whether such a foster home exists (or can be created) with the skillsets to meet Estrellita's needs, including the possibility of a bilingual foster home with such skillsets. The court set a further hearing for January 26, 2015 for a dispositional review and permanency hearing. We have set forth further relevant details of the court's findings in the analysis section below.

## ASSIGNMENTS OF ERROR

The State asserts, restated, that the juvenile court erred in dismissing its motion for guardianship because (1) it applied an incorrect standard, lack of opportunity, and incorrectly attributed the inability of Estrellita's parents to care for her to barriers; (2) guardianship is in Estrellita's best interests; and (3) it did not address all of the medical experts' testimony in determining Estrellita's best interests.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Joseph S.*, 288 Neb. 463, 849 N.W.2d 468 (2014). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.* In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

A jurisdictional issue that does not involve a factual dispute presents a question of law. *In re Interest of Octavio B.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

## ANALYSIS

*Jurisdiction.*

Before addressing the merits of the State's assignments of error, we must address two jurisdictional issues. First, we address the Appellees' assertions that we do not have jurisdiction over the State's appeal because the order appealed from does not affect a substantial right of the State.

For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *In re Interest of Cassandra B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding. *Id.* A proceeding before the juvenile court is a special proceeding for appellate purposes. *Id.* So, the question before us is whether juvenile court's order denying the motion to establish guardianship through alternative disposition affected a substantial right of the State.

The Appellees rely on *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012) (*Karlie D. II*), an appeal from a different juvenile court order than the order this court addressed in *In re Interest of Karlie D.*, 19 Neb. App. 135, 809 N.W.2d 510 (2011) (*Karlie D. I*). *Karlie D. I* was an appeal from an order that made findings regarding the suitability of the juvenile's grandmother as a potential guardian but neither appointed her nor removed the State as guardian. In *Karlie D. I*, this court dismissed the appeal for lack of a final order, analogizing the order to a contempt order which imposed no sanction.

While the appeal in *Karlie D. I* was pending before this court, the juvenile court held a scheduled hearing to address the Department's transition plan of graduated increasing visitation, ending with the juvenile living permanently with her grandmother. The juvenile court adopted the

transition plan but did not order removal of the juvenile from the Department's custody or appoint the grandmother as her guardian. The State appealed, asserting that the juvenile court erred in finding that permanent placement with the grandmother was in the juvenile's best interests. On appeal to the Nebraska Supreme Court, the grandmother argued that the order was not final in that it did not affect a substantial right of the State since it left the juvenile in the Department's custody, did not remove the Department as her guardian, and because the juvenile court could still make a change upon a showing that a change was in the child's best interests.

The Nebraska Supreme Court first observed that a juvenile court, except where an adjudicated child has been legally adopted, may always order a change in the juvenile's custody or care when the change is in the best interests of the juvenile. *Karlie D. II, supra*. Accordingly, the Court rejected the grandmother's argument in that regard.

The Nebraska Supreme Court next considered whether the order at issue in *Karlie D. II* addressed a substantial right of the State. The Court noted that a substantial right is an essential legal right, not a mere technical right. *Id.* Further, a substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken. *Id.* The Court then stated:

> But the application of these definitions in juvenile cases—where the best interests of the child are the primary concern—is not always clear. Most of our cases dealing with the finality of juvenile court orders involve the substantial right of a parent. Here, it is the substantial right of the State, if any, which is at issue. For purposes of this analysis, the Department and the State are one and the same because the Department is a state agency.

283 Neb. at 587-88. The Court noted that the State's right in juvenile cases is derived from its parens patriae interest in the proceedings. *Id.* This means, in essence, that the State has a right to protect the welfare of its resident children. *Id.*

The *Karlie D. II* court observed that the purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. *Id.* This same purpose forms the foundation for the State's parens patriae interest; thus, once the child is adjudicated, the State's interest in protecting the child becomes greater and more necessary. *Id.* The Court held that once a juvenile has been adjudicated under § 43-247(3) and the court has granted the Department, and thus the State, custody of the child, the State has the right to recommend where the child should live. *Karlie D. II, supra*. The child in *Karlie D. II* had been adjudicated and placed in the Department's custody. The order at issue denied the Department's recommended placement and ended the dispositional phase of the proceeding. The Court concluded that the order permanently moving the child to live with her grandmother affected an existing right of the State and was appealable.

In this case, Estrellita has been adjudicated under § 43-247(3)(a) and the Department, and thus the State, was granted custody of Estrellita. Here, the State was attempting to finalize Estrellita's permanency situation with a guardianship, removing itself from any further responsibility in the case. In contrast with the order in *Karlie D. I*, in which the juvenile court did not make any new order regarding guardianship, the court in this case specifically denied the request to establish a guardianship. While the order does not change Estrellita's physical placement, it does affect the potential legal status of the foster mother and the State. The State's

request was rejected as not in Estrellita's best interests and because the court found that further reasonable efforts were required. While there are to be further hearings as to the optimum way to conduct these reasonable efforts, we conclude that the order affected a substantial right of the State and is appealable at this time. The court's order is more analogous to one denying a motion to terminate parental rights which is appealable. See, e.g., *In re Interest of Joseph S.*, 21 Neb. App. 706, 842 N.W.2d 209 (2014) (appeal by State of order denying petition to terminate parental rights), reversed on other grounds, *In re Interest of Joseph S.*, 288 Neb. 463, 849 N.W.2d 468 (2014).

Second, we address the Appellees' arguments that the State did not have standing to present a permanency plan. Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *In re Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011); *In re Interest of Montana S.*, 21 Neb. App. 315, 837 N.W.2d 860 (2013). A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. *Hauxwell v. Henning*, 291 Neb. 1, ___ N.W.2d ___ (2015). Only a party that has standing—a legal or equitable right, title, or interest in the subject matter of the controversy—may invoke the jurisdiction of a court or tribunal. *Id.* Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *In re Meridian H., supra*. The focus is on the party, not the claim itself. *Id.* Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Id.* To have standing, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties. *Id.*

The Appellees note Neb. Rev. Stat. § 43-285(2) (Cum. Supp. 2014), which provides:

Following an adjudication hearing at which a juvenile is adjudged to be under subdivision (3)(a) or (c) of section 43-247, the court may order the department to prepare and file with the court a proposed plan for the care, placement, services, and permanency which are to be provided to such juvenile and his or her family. . . .

They also cite Neb. Rev. Stat. § 43-1312(2) (Cum. Supp. 2014), which provides:

If the return of the child to his or her parents is not likely based upon facts developed as a result of the investigation, the Department of Health and Human Services shall recommend termination of parental rights and referral for adoption, guardianship, placement with a relative, or, as a last resort, another planned permanent living arrangement. . . .

The Department argues that because these statutes designate the Department as the entity to present a permanency plan to the court, it is the party with standing, and the county attorney lacked standing to present a motion which would have changed the designated permanency plan. Section 45-285(2) provides that after adjudication, the juvenile court may order the Department to prepare and file a proposed permanency plan. Section 43-1312(2) requires the Department to

recommend termination of parental rights and referral for some form of permanent living arrangement if investigation shows that reunification is unlikely. We see nothing in either statute that precludes the county attorney from presenting a motion which would change the designated permanency plan.

As noted above, Estrellita has been adjudicated under § 43-247(3)(a) and the juvenile court granted the Department, and thus the State, custody of Estrellita, at which point the State's parens patriae interest in protecting Estrellita became greater and more necessary. See *Karlie D. II, supra.* We also note § 43-285(5) provides:

> When the court awards a juvenile to the care of the department, an association, or an individual, then the department, association, or individual shall have standing as a party to file any pleading or motion, to be heard by the court with regard to such filings, and to be granted any review or relief requested in such filings consistent with the Nebraska Juvenile Code.

We conclude that the State in its parens patriae role has an interest in protecting Estrellita, an adjudicated child in its custody, and thus had standing to bring the motion at issue in this case.

*Reasonable Efforts.*

The State asserts that the juvenile court erred in dismissing its motion for guardianship because it applied an incorrect standard, lack of opportunity, and incorrectly attributed the inability of Estrellita's parents to care for her to barriers.

The juvenile court denied the State's motion, in part, based on its determination that continued reasonable efforts were required. Section 43-283.01 provides:

> (1) In determining whether reasonable efforts have been made to preserve and reunify the family and in making such reasonable efforts, the juvenile's health and safety are the paramount concern.
>
> (2) Except as provided in subsection (4) of this section, reasonable efforts shall be made to preserve and reunify families prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home.
>
> (3) If continuation of reasonable efforts to preserve and reunify the family is determined to be inconsistent with the permanency plan determined for the juvenile in accordance with a permanency hearing under section 43-1312, efforts shall be made to place the juvenile in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the juvenile.
>
> (4) Reasonable efforts to preserve and reunify the family are not required [upon court determinations not applicable in this case].
>
> . . . .
>
> (6) Reasonable efforts to place a juvenile for adoption or with a guardian may be made concurrently with reasonable efforts to preserve and reunify the family, but priority shall be given to preserving and reunifying the family as provided in this section.

First, the State takes issue with the juvenile court's statements that "although reasonable efforts have been made, the court finds that they have been compromised by the barriers set forth" and that despite "a reasonable amount of time and a reasonable amount of efforts to bring about the permanency objective of reunification" there has been "a lack of reasonable opportunity and this lack of opportunity has diluted the effectiveness of the reasonable efforts." We disagree that the court applied a standard of "lack of opportunity." When the court's thorough and lengthy order is read as a whole, it is apparent that the court correctly considered the question of whether reasonable efforts to bring about the permanency objective of reunification had been made and whether continued reasonable efforts were consistent with that objective and whether such efforts would be contrary to Estrellita's health and safety. We view the court's statements to say that while efforts had been made over a period of time to aid the family in reunification, given the particular circumstances, or barriers, present in this case, further efforts are required.

The State also takes issue with the circumstances, or barriers, identified by the juvenile court which prevented the efforts in this case toward reunification from being reasonable, including language barriers, relationships between primary caregivers, and geographical barriers. To the extent that the State's arguments with respect to the barriers identified by the court involve its resolution of conflicting evidence, we consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.* See *In re Interest of Joseph S.*, 288 Neb. 463, 849 N.W.2d 468 (2014). However, many of the State's arguments are closely related to the issue of best interests, which we address below. Regardless of how the evidence with respect to the barriers identified by the juvenile court is weighed and how any conflicts in that evidence are resolved, it is clear upon our de novo review that the complexity of Estrellita's medical issues, the issues of geography and language, the complexity of the legal proceedings, the disparity in education and medical expertise between the foster mother and the parents, and many other factors have had a profound effect on the reunification process in this case. Given this complexity, the real issue becomes whether continued efforts toward reunification are in Estrellita's best interests.

*Best Interests.*

The State asserts that the juvenile court erred in dismissing its motion for guardianship because guardianship is in Estrellita's best interests. The State further asserts that the court erred by not specifically addressing every medical expert's testimony in determining Estrellita's best interests. The State essentially argues that guardianship is in Estrellita's best interests because Jose and Luxarelli are not capable of providing for her medical care and further efforts toward reunification will not render them capable. The State also argues that the juvenile court relied too heavily on the opinions of witnesses who had not reviewed all of the medical evidence before forming their opinions and that it did not address the opinion of one of the psychologists who first provided mental health therapy for Estrellita.

Initially, we observe that the State's arguments point out a difficulty inherent in much of the evidence in this case. There were expert witnesses who formed their opinions without having reviewed all aspects of Estrellita's healthcare relating to both her mental and her physical health. Given that Estrellita's burn injuries occurred in 2009 and trial began in 2013, there were witnesses

who provided care for Estrellita or training and supervision to the parents at different points and who were not familiar with Estrellita's needs or the parents' capabilities during other periods. Finally, the trial in this case took place over the course of more than 10 months, and some of the witnesses who had more comprehensive knowledge of the case testified earlier in the proceedings. Accordingly, the record does not reflect whether their opinions may have changed based on information available at a point in time closer to when the juvenile court reached its decision. We also observe that the court's order was lengthy and quite thorough, but the court was not required to discuss the testimony of every single witness in its order. It is clear from a review of the order, and this court's de novo review of the massive record, that the juvenile court was familiar with the entire record and was aware of the bases for the various experts' opinions.

The State argues the juvenile court did not address the concerns expressed by some of the medical professionals about the danger of not having proper follow-up care after each of Estrellita's surgeries. While the court did not address this testimony specifically in its written order, we again note that it was not required to do so. Upon our de novo review, we have considered the evidence showing the importance of follow-up care after each of Estrellita's surgeries and the danger that improper care will diminish the effectiveness of those surgeries. We also note that there is no evidence to suggest that the parents have harmed Estrellita by any of the care they have provided so far.

The State notes evidence with respect to Jose's past criminal history and uncertain immigration status and one witness' concern that Estrellita would not receive proper care if Luxarelli were left as a single parent with multiple children. While we are mindful of these concerns, any conclusions about Jose's future immigration status and criminal behavior are speculative.

Turning to some of the barriers that have hampered reunification efforts in this case, we note first the State's arguments about language barriers. The State observes the steps taken by the foster mother to help Estrellita learn Spanish. We applaud her in these efforts, which should be continued, but we are more concerned with the parents' language barrier. The State notes that the parents have been provided with interpreter services and have never asked their case worker for a different level of interpretation. There is nothing in the record to show, however, that they knew they could ask or knew that they might benefit from something different. Interpretation services were provided during the course of the trial, and it was apparent from our de novo review, just how difficult it was to get across the meaning of medical terminology, especially in instances when the attorneys asked questions using terminology that translated differently from the day-to-day terminology used by the parents. It is unclear how great a role the language barrier has played in the parents' alleged incapability to provide Estrellita's medical care. We also observe with respect to geography, the record shows that Lincoln was the best initial place for many of Estrellita's medical services, but that at least some evidence suggests that a portion of her current services being provided in Lincoln could be provided elsewhere. It is unclear to what extent the geographical issues have hampered reunification efforts in this case. Certainly, at the very least, they have limited the time available to the parents to learn and retain the skills needed to care for Estrellita in her ongoing recovery.

Finally, the State again relies on a certain amount of conflicting evidence and we give weight to the juvenile court's resolution of those issues. See *In re Interest of Joseph S.*, 288 Neb. 463, 849 N.W.2d 468 (2014).

As the State notes, children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B.*, 290 Neb. 589, 861 N.W.2d 415 (2015). However, our de novo review of the record in this case supports the conclusion that continued efforts toward reunification are in Estrellita's best interests.

## CONCLUSION

The juvenile court did not apply an incorrect standard in determining that further reasonable efforts toward reunification are required in this case. We conclude that continued efforts toward reunification are in Estrellita's best interests, and thus the juvenile court did not err in denying the State's motion to establish guardianship through alternative disposition.

AFFIRMED.