IN RE INTEREST OF C.D.C., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. J.R.C. AND N.J.C.,
APPELLANTS.
455 N.W.2d 801

Filed May 25, 1990.    No. 89-871.

Robert A. Laughlin, of Prince and Laughlin, for appellant J.R.C.

Wesley E. Hauptman, of Green, Hauptman & Kivett, for appellant N.J.C.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

Thomas M. Kenney, Douglas County Public Defender, and Regina T. Makaitis, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

Defendants, J.R.C. and N.J.C., appeal the judgment terminating their parental rights to C.D.C., a son born to them on April 12, 1986. The parents contend that the court below erred in finding that they failed to comply with the rehabilitation program established for each and that termination of their parental rights was in their son's best interests. The father further urges that the juvenile court erred in prescribing a rehabilitation program which contained provisions which were not reasonably necessary for the plan's ultimate success. The mother further argues that the juvenile court erred in finding that she had substantially and continuously or repeatedly neglected her son and refused to give him the necessary parental care and protection. We affirm.

## II. BACKGROUND

The juvenile court acquired jurisdiction over the child on May 12, 1987, as a result of an adjudication that he fit within Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) by virtue of having suffered a skull fracture which the parents could not explain and because the father had on several occasions spanked the then less than 7-month-old child, had on several occasions held his hand over the child's mouth to prevent the child from crying, and had physically abused the mother while the child was in their custody, and because the mother had failed to remove or protect the child from such an environment. That

adjudication being a final appealable order, *In re Interest of C.D.A.*, 231 Neb. 267, 435 N.W.2d 681 (1989), from which neither parent appealed, the parents may not now question the existence of the facts on which the juvenile court asserted jurisdiction over their child. See, *In re Interest of L.B., A.B., and A.T.,* ante p. 134, 454 N.W.2d 285 (1990); *In re Interest of M.B. and J.B.,* 233 Neb. 368, 445 N.W.2d 618 (1989). The juvenile court later prescribed rehabilitation plans for both parents in order to correct the conditions which led the juvenile court to assert jurisdiction.

## III. ANALYSIS

We begin our analysis by recalling the rule that in order to terminate parental rights, the State must prove by clear and convincing evidence that termination of parental rights is in the child's best interests and that at least one of the six bases provided in Neb. Rev. Stat. § 43-292 (Reissue 1988) exists. *In re Interest of C.P.,* ante p. 276, 455 N.W.2d 138 (1990). Among the bases for termination of parental rights, § 43-292 includes:

> (2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of C.P., supra; In re Interest of T.E., S.E., and R.E.,* ante p. 420, 455 N.W.2d 562 (1990); *In re Interest of M.M., C.M., and D.M.,* 234 Neb. 839, 452 N.W.2d 753 (1990); *In re Interest of C.N.S. and A.I.S.,* 234 Neb. 406, 451 N.W.2d 275

(1990).

## 1. Father's Appeal

As noted in part I above, the father contends that the record does not establish failure on his part to comply with the court-ordered plan, that several provisions of the plan are not reasonable and material, and that termination of his parental rights is not in his son's best interests. We consider each of these claims in turn.

### (a) Compliance with the Plan

The juvenile court ordered the father to obtain a chemical dependency evaluation and participate in the "NOVA Therapeutic Community Substance Abuse Treatment" program, participate in a men's domestic violence group, refrain from illegal activity, maintain adequate legal employment, maintain adequate independent housing for himself and keep rent current, maintain regular visits with the child, cooperate with the persons involved in his rehabilitation, and notify the court of any change in residence or employment. At a subsequent review hearing, the court further ordered the father to abstain from all use of drugs or alcohol.

The record reveals that the father willfully failed to comply with the requirements set forth by the juvenile court. See, *In re Interest of C.N.S. and A.I.S., supra*; *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990) (in order to justify termination of parental rights based upon a failure to comply with a provision of a rehabilitation plan, the evidence must show that the parent's failure was willful). As largely established by his own admissions, the father failed to participate in any of the treatment programs prescribed by the court; was arrested and placed in prison once during the rehabilitative period; physically abused the mother on many occasions; held only occasional temporary jobs; failed to maintain his own residence or contribute to the rent the mother paid; failed to visit the child regularly, at one time not seeing the child for approximately 17 months; and used drugs and alcohol during the rehabilitative period. The father himself testified that his compliance with the plan was "more of a con than reality."

### (b) Reasonableness of Plan

The father next contends that the requirements of the plan that he attend counseling at the NOVA substance abuse treatment program and maintain adequate legal employment are unreasonable and not material to the correction of the situation for which the child was previously adjudicated.

A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. *In re Interest of C.N.S. and A.I.S., supra*; *In re Interest of J.L.M. et al., supra*. While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, where the failure of a parent to comply with a rehabilitation plan is an independent ground for termination of parental rights, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child. See, *In re Interest of P.D.*, 231 Neb. 608, 437 N.W.2d 156 (1989); *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988).

An intake coordinator for NOVA described NOVA as a "long-term residential and out-patient and partial-care [drug and alcohol] treatment program for adolescents and adults." Based upon an interview with the father and his past history of involvement with drugs and alcohol, the coordinator recommended that the father enter the residential treatment program at NOVA in order to receive treatment for his chemical dependency and "other dysfunctional behaviors." The coordinator testified that NOVA concentrates on an individual's behavioral problems because correcting the behavioral problems leads to correction of the drug and alcohol problems. The father has a history of involvement with drugs and alcohol and admitted to the coordinator that he had difficulty with socialization and a problem with drugs and alcohol. In June 1988, the father was evaluated by an outpatient counselor at NOVA who also recommended that the father participate in inpatient treatment at NOVA.

It is apparent that the provision requiring the father to participate in NOVA is directly correlated to the plan's objective

of reuniting the father with the child and securing the health and well-being of the child. The father urges that NOVA was not appropriate for him in that NOVA uses a confrontational approach to treatment, and a Dr. Bartholow, who evaluated the father for the Division of Rehabilitation Services of the Nebraska Department of Education, recommended that the father avoid "emotional stress and pressure." Bartholow evaluated the father not for purposes of determining the type of treatment the father needed, but for purposes of determining his amenability to vocational rehabilitation. The two NOVA counselors, who evaluated the father specifically for purposes of determining what type of treatment the father needed, were of the opinion that the confrontational program at NOVA would be beneficial. Because the father repeatedly failed to involve himself in inpatient treatment, the court was unable to monitor his progress and determine whether the NOVA confrontational approach was indeed beneficial to him.

It is also apparent that the requirement that the father maintain adequate legal employment is reasonably related to the plan's objective of reuniting the father with the child and securing the health and well-being of the child. Although there is evidence in the record that the father had a back problem which inhibited his ability to work, there was also evidence that the father was employable, but simply lacked the motivation to maintain steady employment. A parent is required to provide his child with the basic necessities of life. See, *State of Iowa ex rel. Petersen v. Miner*, 226 Neb. 551, 412 N.W.2d 832 (1987); *Coffey v. Coffey*, 205 Neb. 191, 286 N.W.2d 753 (1980).

In addition, the father complains that the plan failed to include a provision for mental health therapy, which provision he claims was "reasonably necessary for the plan[']s ultimate success." As noted above, the NOVA inpatient program provides treatment for behavioral problems, but because the father failed to participate, the court was unable to determine whether the treatment NOVA provided was beneficial.

### (c) Child's Best Interests
Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child

require termination of the parental rights. *In re Interest of C.N.S. and A.I.S.*, 234 Neb. 406, 451 N.W.2d 275 (1990); *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990). Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *In re Interest of M.M., C.M., and D.M.*, 234 Neb. 839, 452 N.W.2d 753 (1990). The father's unwillingness to comply with a rehabilitative program directed at reuniting him with his child and designed to secure the continued long-term health and well-being of the child compels the conclusion that termination of his parental rights to the child is in the child's best interests.

### 2. Mother's Appeal

The mother, as noted in part I above, contends that the record contains no evidence which substantiates noncompliance with a reasonable and material provision of the rehabilitation program the court prescribed for her, that the evidence fails to show that she has neglected her child, and that termination of her parental rights is not in the child's best interests. As we did in connection with the father's appeal, we consider each of the mother's claims in turn.

### (a) Compliance with the Plan

The mother has complied substantially with the plan prescribed for her, having cooperated in the various programs offered to her and having maintained very regular visitations with the child. At issue is whether she has complied with the requirement that she "maintain a safe, violence and drug free environment for at least 3 months prior to consideration of [the child's] placement in her home."

The record establishes that the father continually moved in and out of the mother's life and that when he resided with her, he physically abused her. According to the evidence, on various occasions the father had kicked the mother, given her a black eye, hit her in the chest, threatened her with a knife, burned her by throwing a cup of hot coffee on her, and caused bruises on her legs. In addition, once when "quite angry," the father had broken the mother's radio and television and thrown things around her apartment. On another occasion, again when the father was angry, he had dragged the mother by her hair across

a parking lot.

Although the mother tried several times to leave the father, she always returned to him. Twice she filed for divorce but, at the time of the termination petition and judgment, had reconciled with the father. The mother told one of the rehabilitation counselors for the Mental Health Center at Immanuel Medical Center that she was aware she was choosing the father over her son.

The rehabilitation counselor, who had provided therapy to the mother for 3 years, stated that when the father was absent from the mother's life, the mother was able to recognize the danger involved in the father's abusive behavior but that when the father returned, the mother would delude herself into believing that he was not abusive. According to the counselor, the mother was "unable to maintain a realistic appraisal of [the father] for any length of time." In the counselor's opinion the mother had not shown good judgment in protecting herself from the father, and the counselor was of the further opinion that the mother was unable to keep the child safe. According to the counselor, it is not healthy for a child to grow up in an environment where one parent abuses the other. The counselor acknowledged that the mother could be a good parent if she would disassociate herself from the father.

A social worker for the Nebraska Department of Social Services held similar views that the mother did not realize the danger posed by the father's abusive nature and was as yet unable to sever the relationship with the father. The social worker opined that the parents, as a couple, were unable to provide a safe and stable home for the child.

The record establishes that although the mother completed participation in the "Women Against Violence" program and the "Women Who Love Too Much" support group, she was nevertheless unable to sever her ties with the father, end the abusive relationship, and provide her child with a healthy environment. A parent seeking to avoid termination of her parental rights must do more than merely comply with the court-ordered rehabilitative efforts; she must gain understanding of her problem and make progress in efforts toward changing her behavior. *Dutchess Cty. Dept. of Soc. S. v.*

*Mr. G.*, 141 Misc. 2d 641, 534 N.Y.S.2d 64 (1988). We conclude, as did the lower court, that the mother's inability to provide her child with an environment devoid of abusive behavior constitutes a willful failure to "maintain a safe, violence and drug free environment for at least 3 months prior to consideration of [the child's] placement in her home." Children have the right to grow up in a wholesome and healthful atmosphere, free of fear of abuse or injury. *In re Interest of K.C. and C.C.*, 227 Neb. 84, 416 N.W.2d 24 (1987).

### (b) Neglect

We further conclude that the mother's continued relationship with the abusive father constitutes substantial and continuous or repeated neglect and a refusal to give her child the parental care and protection which is necessary. We have stated that a parent may as surely neglect a child of whom she does not have possession by failing to put herself in a position to acquire possession as by not properly caring for a child of whom she does have possession. *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986). By continuing to live in an environment where she is physically abused by the father, the mother has failed to place herself in a position for the child to be returned to her.

### (c) Child's Best Interests

The record contains clear and convincing evidence which establishes that despite efforts by the court, the mother is unable to terminate the abusive relationship she has with her husband and is therefore unable to provide a healthy, loving, and safe environment for her child. We therefore conclude that termination of the mother's rights in the child is in his best interests.

## IV. DECISION

Since the record fails to sustain any of the father's or mother's assignments of error, the judgment of the juvenile court is affirmed as to each parent.

AFFIRMED.