Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:12 PM CDT

- 592 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

IN RE INTEREST OF MIAH T. AND DeKANDYCE H.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
DeKARLOS H., APPELLANT.

___ N.W.2d ___

Filed February 2, 2016.    Nos. A-15-417, A-15-694.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.

4. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.

5. ____: ____: ____: ____. An order which is entered after a child is adjudicated to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014) and which requires a parent to complete some sort of rehabilitation plan affects a substantial right of the parent and is, thus, generally, a final, appealable order.

6. **Juvenile Courts: Final Orders: Time: Appeal and Error.** Where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the

- 593 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed.

7. **Juvenile Courts: Jurisdiction.** When a juvenile court finds a child to be within the meaning of Neb. Rev. Stat. § 43-247 (Cum. Supp. 2014), it is vested with jurisdiction not only over the child but also over the child's parents.

8. **Juvenile Courts: Parental Rights.** A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code.

9. ____: ____. The provisions of a rehabilitation plan must be reasonably related to the plan's ultimate objective of reuniting parent with child.

10. **Juvenile Courts: Child Custody.** Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.

11. **Child Custody: Parental Rights.** The parental preference doctrine holds that in a child custody controversy between a biological parent and one who is neither a biological nor an adoptive parent, the biological parent has a superior right to custody of the child.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, and Christopher M. Reid for appellee.

MOORE, Chief Judge, and IRWIN and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

DeKarlos H. appeals from two separate orders entered by the separate juvenile court of Lancaster County. In case No. A-15-417, DeKarlos appeals from the juvenile court's order which requires him to attend both a domestic violence batterers' intervention course and a victims' impact group prior to the court's considering DeKarlos as a viable placement for his daughter, DeKandyce H. In case No. A-15-694,

DeKarlos appeals from the juvenile court's order which continued DeKandyce's placement in a foster home, rather than placing her with DeKarlos. The two appeals were consolidated for briefing in this court, and we consolidate them for opinion as well.

Upon our de novo review of the record, we affirm the orders of the juvenile court in their entirety.

## II. BACKGROUND

This appeal involves DeKarlos and his daughter, DeKandyce, born in October 2007. The juvenile court proceedings below also involve DeKandyce's mother, Everlyn B., and DeKandyce's half sister, Miah T. However, Everlyn and Miah are not involved in this appeal and their involvement in the juvenile court proceedings will only be discussed to the extent necessary to provide context for the circumstances giving rise to this appeal.

On July 14, 2014, the State filed a petition alleging that DeKandyce, who was then 6 years old, was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) due to the faults or habits of Everlyn, DeKandyce's custodial parent. Specifically, the petition alleged that on or about July 11, Everlyn was under the influence of alcohol and threatened to strike or stab Miah, who was then 11 years old. Although DeKandyce was not the target of Everlyn's violent behavior, she was present during this incident. Ultimately, DeKandyce and Miah were removed from Everlyn's home and placed in the temporary custody of the Department of Health and Human Services (Department) for out-of-home placement.

A few days after the petition was filed, on July 16, 2014, the juvenile court appointed DeKarlos with an attorney to represent his interests in the proceedings. DeKarlos was permitted to have unsupervised visitations with DeKandyce, subject to "random drop-ins" by Department workers.

On September 22, 2014, Everlyn pled no contest to the allegations in the petition. As a result of Everlyn's plea,

- 595 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

DeKandyce was adjudicated to be a child within the meaning of § 43-247(3)(a). Subsequently, on January 21, 2015, the juvenile court entered a dispositional order requiring Everlyn to comply with a rehabilitation plan which was designed to remedy the circumstances which resulted in DeKandyce's adjudication. In addition, in the January 21 order, the juvenile court required DeKarlos to participate in "domestic violence education" if he wanted to be considered for placement of DeKandyce.

On April 1, 2015, a review hearing was held. DeKarlos did not appear at this hearing. During this hearing, the family's Department case manager testified that since the January 2015 dispositional hearing, DeKarlos had not completed a domestic violence education program. Although he had enrolled in such a program, DeKarlos was discharged unsuccessfully for failing to regularly attend the classes and for lying to the instructor. DeKarlos indicated to the Department that he did not plan on reenrolling in a domestic violence education program. However, the case manager testified that the Department continued to recommend that DeKarlos attend such a program prior to being considered as a placement for DeKandyce. In addition, the court report authored by the case manager and offered, without objection, by the State at the review hearing reveals that the Department's recommendation that DeKarlos attend domestic violence education stemmed from DeKarlos' criminal history. DeKarlos had been arrested for incidents of domestic violence on multiple occasions, including in August 2014, after the current juvenile court proceedings had been initiated. The victim in the August 2014 incident was Everlyn.

After the April 1, 2015, review hearing, the juvenile court entered an order. As a part of that order, the court required DeKarlos to attend and successfully complete both a domestic violence batterers' intervention course and a victims' impact group if he wished to be considered as a placement for DeKandyce. In addition, immediately after the review hearing,

on April 2, the State filed a supplemental petition alleging that DeKandyce was a child within the meaning of § 43-247(3)(a) (Cum. Supp. 2014) due to the faults or habits of DeKarlos. Specifically, the petition alleged that although DeKarlos knew that DeKandyce had been removed from Everlyn's home and placed in foster care, DeKarlos had "failed to fully participate in the neglect case involving DeKandyce . . . and/ or ha[d] failed to place himself in a position to have placement of DeKandyce . . . and/or assume the care and custody of DeKandyce."

DeKarlos appealed from the court's April 2015 order in case No. A-15-417.

Approximately 1 month after DeKarlos filed his appeal in case No. A-15-417, DeKandyce's foster parents, who were DeKarlos' cousin and his wife, notified the Department that they did not want to care for DeKandyce and Miah any longer. The foster parents reported that they felt like both Everlyn and DeKarlos were harassing them.

As a result of the foster parents' request that DeKandyce and Miah be removed from their home, the Department placed the girls in a nonrelative foster home and filed a motion for approval of a placement change with the juvenile court. The juvenile court approved the placement change pending a hearing, which was scheduled for June 25, 2015.

At the June 25, 2015, hearing, the family's case manager testified. She indicated that both DeKandyce and Miah were removed from the home of DeKarlos' cousin at the request of his cousin's wife. It was reported to the case manager that the foster parents were being harassed by both Everlyn and DeKarlos. Specifically, as to DeKarlos, it was reported that DeKarlos made derogatory comments about his cousin and his cousin's wife while he was intoxicated. In addition, DeKarlos almost got into an altercation with his cousin due to these derogatory remarks.

The case manager testified that when DeKandyce was removed from her foster home, DeKarlos was not considered

- 597 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

as a possible placement for DeKandyce. The Department did not consider DeKarlos because he had not completed any domestic violence education; because he had multiple entries on a child abuse and neglect registry indicating that he had previously emotionally or physically neglected seven different children; and because in the 11 months the juvenile court proceedings had been pending, DeKarlos had been incarcerated three different times. In addition, at the time of the June 25, 2015, hearing, DeKarlos had an outstanding warrant for his arrest due to his failure to pay child support.

The case manager did indicate, however, that both DeKandyce and Miah had been placed with DeKarlos during a prior juvenile court case and for a few days around the Christmas holiday during the current juvenile court case. The case manager was not aware of any concerns reported during these placements.

DeKarlos also testified at the hearing. He denied ever harassing his cousin's family. He indicated that he was not happy with DeKandyce's new foster home because he received fewer telephone calls and visits with DeKandyce since she had been moved. He testified that he wanted both DeKandyce and Miah to be placed with him. He believed that he was capable of providing a safe environment for the girls. He also refuted the case manager's testimony about his inclusion on the child abuse and neglect registry because he was working to get those entries expunged.

After the hearing, the juvenile court entered an order approving the current placement of DeKandyce in a nonrelative foster home.

DeKarlos also appeals from this order.

## III. ASSIGNMENTS OF ERROR

In case No. A-15-417, DeKarlos alleges that the juvenile court erred in requiring him to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce.

- 598 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

In case No. A-15-694, DeKarlos alleges that the juvenile court erred in failing to place DeKandyce in his home.

## IV. ANALYSIS

### 1. Standard of Review

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Karlie D.*, 283 Neb. 581, 511 N.W.2d 214 (2012).

### 2. Appeal in Case No. A-15-417

In case No. A-15-417, DeKarlos appeals from the juvenile court's April 2015 order which requires him to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce. However, before we address the merits of DeKarlos' argument on appeal, we must first determine whether the April 2015 order DeKarlos is appealing from is a final, appealable order.

[2-4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Id*. Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child. See *id*. Thus, if the juvenile court's order requiring DeKarlos to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce affected his substantial right to

- 599 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

raise DeKandyce, the order was final and appealable. But if the order did not affect a substantial right, we lack jurisdiction and must dismiss the appeal.

[5] A substantial right is an essential legal right, not a mere technical right. *Id*. Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. *Id*. An order which is entered after a child is adjudicated to be within the meaning of § 43-247(3)(a) and which requires a parent to complete some sort of rehabilitation plan affects a substantial right of the parent and is, thus, generally, a final, appealable order. See, *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998). As such, it would appear that the April 2015 order requiring DeKarlos to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce affected his substantial right to raise DeKandyce and is a final, appealable order.

[6] However, the State argues that the April 2015 order is not a final, appealable order because it "merely alters" the juvenile court's order from January 2015 which required DeKarlos to attend domestic violence education before he would be considered as a placement for DeKandyce. Brief for appellee at 13. It is well settled that in juvenile cases, where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed. See, e.g., *In re Interest of Mya C. & Sunday C.*, 286 Neb. 1008, 840 N.W.2d 493 (2013). Stated another way, a dispositional order which merely continues a previous determination of the juvenile court is not an appealable order. *In re Interest of Octavio B.*

- 600 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

*et al., supra*; *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013). See *In re Interest of Mya C. & Sunday C., supra*.

We recognize that the juvenile court's April 2015 order which requires DeKarlos to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce is similar to its January 2015 order which required DeKarlos to attend domestic violence education before he would be considered as a placement for DeKandyce. But, even though the orders are similar, they are not the same. The April 2015 order is much more specific about exactly which domestic violence education classes DeKarlos is required to attend. In addition, the April 2015 order actually requires DeKarlos to attend two separate courses: a domestic violence batterers' intervention course and a victims' impact group. The practical effect of the court's decision to require DeKarlos to attend two separate courses may be that it takes DeKarlos a longer period of time to complete the courses and, thus, takes him a longer period of time to obtain placement of DeKandyce.

Because of the fundamental and material differences between the requirements prescribed in the January 2015 order and in the April 2015 order, we conclude that the April 2015 order is not merely a continuation of the previous order. An order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights. See *In re Interest of Mya C. & Sunday C., supra*. As such, we conclude that the April 2015 order affects a substantial right of DeKarlos and is appealable.

Having concluded that the April 2015 order is final and appealable, we now discuss the substance of DeKarlos' arguments on appeal. DeKarlos asserts that the juvenile court erred in requiring him to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce because

- 601 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MIAH T. & DEKANDYCE H.
Cite as 23 Neb. App. 592

he "is not an adjudicated parent" and his participation in these classes would not correct the circumstances which gave rise to DeKandyce being adjudicated as a child within the meaning of § 43-247(3)(a). Brief for appellant at 19. DeKarlos also asserts that there was insufficient evidence to show that DeKarlos' admittedly undesirable behavior has in any way impacted DeKandyce. Upon our de novo review of the record, we cannot say that the juvenile court erred in its April 2015 order.

DeKarlos asserts that the court erred in requiring him to attend a domestic violence batterers' intervention course and a victims' impact group before he would be considered as a placement for DeKandyce because DeKandyce was adjudicated as a child within the meaning of § 43-247(3)(a) only as to Everlyn, not as to DeKarlos. He suggests that the juvenile court lacks the authority to impose requirements and restrictions on him before he is subject to formal adjudication proceedings. DeKarlos' assertion in this regard is without merit.

[7] Section 43-247(5) provides that the juvenile court shall have jurisdiction of "[t]he parent, guardian, or custodian of any juvenile described in this section." The plain language of this subsection suggests that when a juvenile court finds a child to be within the meaning of § 43-247, it is vested with jurisdiction not only over the child but also over the child's parents.

In *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005), the Supreme Court analyzed the language of § 43-247(5) as it was then written. Neb. Rev. Stat. § 43-247(5) (Cum. Supp. 2002) provided that the juvenile court shall have jurisdiction over "[t]he parent, guardian, or custodian who has custody of any juvenile described in this section." The court determined that "pursuant to the plain meaning of [§ 43-247(5)], the juvenile court's jurisdiction is extended to parents who have custody of any juvenile who has been found to be a child described in § 43-247." *In re Interest of Devin W. et al.*, 270 Neb. at 652, 707 N.W.2d at

- 602 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

766-67. The court then held that, because of this statutory language, the juvenile court had jurisdiction over the child at issue and the child's custodial father, even though the child was adjudicated to be a child within the meaning of § 43-247(3)(a) only due to the acts of his mother. The court specifically disapproved of the concept that a child is "adjudicated as to" one parent or the other because it is the child, not the parent, that is adjudicated in order to protect the child's rights. The court distinguished that the parents' rights are determined in the dispositional phase of the case, not the adjudication phase.

In 2008, a few years after the Supreme Court decided *In re Interest of Devin W. et al., supra*, § 43-247(5) was amended such that the language which indicated that a juvenile court's jurisdiction extended only to a *custodial* parent, guardian, or custodian whose child has been found to be within the meaning of § 43-247 was eliminated. See § 43-247 (Reissue 2008). As we stated above, § 43-247(5) (Cum. Supp. 2014) currently provides that the juvenile court shall have jurisdiction of "[t]he parent, guardian, or custodian of any juvenile described in this section." As a result of this change to the statutory language, the juvenile court's jurisdiction is now extended to any parent or guardian of a child who has been found to be within the meaning of § 43-247.

DeKandyce was adjudicated to be a child within the meaning of § 43-247(3)(a). Due to DeKandyce's adjudication, the juvenile court has jurisdiction over DeKandyce, Everlyn, and DeKarlos. And, because the court has jurisdiction over DeKarlos, it had the authority to require DeKarlos to submit to domestic violence education courses prior to considering him for placement of DeKandyce.

Now that we have determined that the juvenile court had the authority to enter the April 2015 order which requires DeKarlos to participate with a rehabilitation plan by attending a domestic violence batterers' intervention course and a victims' impact group, we now must determine whether such

- 603 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

an order was proper under the circumstances of this case. On appeal, DeKarlos asserts that the provisions of the rehabilitation plan were unreasonable and unrelated to the circumstances which caused DeKandyce to be adjudicated pursuant to § 43-247(3)(a). Upon our de novo review, we affirm the juvenile court's order.

[8,9] A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013). The provisions of a rehabilitation plan must be reasonably related to the plan's ultimate objective of reuniting parent with child. See, *id*; *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

In this case, DeKandyce was adjudicated to be a child within the meaning of § 43-247(3)(a) because she was placed at risk of harm when she witnessed her mother act aggressively and violently toward DeKandyce's half sister, Miah, and because she lacked a safe and stable home. While the specific circumstances leading to DeKandyce's adjudication involved only Everlyn and not DeKarlos, there was evidence presented during the juvenile court proceedings which indicated that DeKarlos also may not be able to provide DeKandyce a safe and stable home free from domestic violence.

This evidence revealed that DeKarlos has a history of engaging in acts of domestic violence. In fact, DeKarlos was involved in an altercation with Everlyn after the current juvenile court proceedings were initiated. Given this evidence, it was reasonable for the juvenile court to require DeKarlos to participate in a domestic violence batterers' intervention course and a victims' impact group before considering him for placement of DeKandyce. Such domestic violence education will assist DeKarlos in his efforts to provide DeKandyce with a safe and stable home which is free from domestic violence. In addition, the courses may help DeKarlos better understand how

- 604 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

to parent DeKandyce given that she has previously witnessed an incident of domestic violence. Although there was no evidence that DeKandyce has ever witnessed DeKarlos engage in domestic violence, the evidence that DeKarlos does have a history of such behavior coupled with DeKandyce's experience with domestic violence, in general, justifies the order requiring DeKarlos to attend the classes.

### 3. Appeal in Case No. A-15-694

In case No. A-15-694, DeKarlos appeals from the juvenile court's June 2015 order which continued DeKandyce's placement in a nonrelative foster home rather than placing her with DeKarlos. Specifically, he argues that he is a fit parent who can provide DeKandyce with a safe and stable home environment. Upon our de novo review of the record, we affirm the order of the juvenile court continuing DeKandyce's placement in a nonrelative foster home.

[10] Neb. Rev. Stat. § 43-285 (Cum. Supp. 2014) provides that once a child has been adjudicated under § 43-247(3), the juvenile court must ultimately decide where a child should be placed. And, juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). However, this discretion, while broad, is not without limitation because of the parental preference doctrine.

[11] The parental preference doctrine holds that in a child custody controversy between a biological parent and one who is neither a biological nor an adoptive parent, the biological parent has a superior right to custody of the child. *In re Interest of Stephanie H. et al.*, 10 Neb. App. 908, 639 N.W.2d 668 (2002). And,

> "[a] court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is *affirmatively shown* that such parent is unfit to perform the duties imposed by the relationship or has forfeited

- 605 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

that right; neither can a court deprive a parent of the
custody of a child merely because the court reasonably
believes that some other person could better provide for
the child."

*Id*. at 924, 639 N.W.2d at 681, quoting *In re Interest of Amber
G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996).

Because of the parental preference doctrine, the propriety of
the juvenile court's June 2015 order concerning DeKandyce's
placement depends on whether there is affirmative evidence
that DeKarlos is presently unfit to care for DeKandyce. The
evidence presented during the juvenile court proceedings
revealed that DeKarlos has failed to complete any domestic
violence education classes despite being ordered to do so by
the juvenile court before he would be considered as a place-
ment for DeKandyce and despite having a history of engag-
ing in domestic violence. In addition, there was evidence that
DeKarlos has a history of neglecting children in his care. In
fact, he is currently listed on the child abuse and neglect regis-
try. In April 2015, the State filed a supplemental petition alleg-
ing that DeKandyce was at risk for harm because of DeKarlos'
neglect of her. And, DeKarlos has had recent and repeated con-
tacts with law enforcement. During the 11 months the juvenile
court proceedings were pending, DeKarlos was incarcerated
three different times. In addition, at the time of the June 25
hearing, DeKarlos had an outstanding warrant for his arrest
due to his failure to pay child support.

Based upon our review of this evidence, we conclude that
there was sufficient evidence presented to demonstrate that
DeKarlos is currently not fit to care for DeKandyce. We do
recognize that there was limited evidence presented which
suggested that DeKarlos had cared for DeKandyce during
previous juvenile court proceedings and had provided respite
care for her for a couple of days over the holidays during the
current juvenile court proceedings. And, although DeKarlos
suggests that this evidence indicates that there should be no
concern about his ability to appropriately care for DeKandyce,

- 606 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF MIAH T. & DeKANDYCE H.
Cite as 23 Neb. App. 592

we cannot characterize the evidence in this way. Caring for a child on a limited basis and with what appears to have been a moderate amount of supervision by Department workers is much different than long-term, permanent placement without such supervision. The evidence presented by the State created significant doubts about DeKarlos' present ability to provide DeKandyce with a safe and stable home environment. Evidence of his limited contact with DeKandyce during the juvenile court proceedings does not mitigate this doubt.

We affirm the June 2015 order of the juvenile court which continued placement of DeKandyce in a nonrelative foster home.

## V. CONCLUSION

Upon our de novo review of the record, we affirm the orders of the juvenile court in cases Nos. A-15-417 and A-15-694 in their entirety.

AFFIRMED.