IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF A'REESHA C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF A'REESHA C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MASHAE W., APPELLANT, AND TYRICE C. AND SHANTEL W., APPELLEES.

Filed June 4, 2024.    No. A-23-853.

Appeal from the Separate Juvenile Court of Douglas County: CANDICE J. NOVAK, Judge. Affirmed.

Reginald L. Young, of Young & Young, for appellant.

Christine P. Costantakos, guardian ad litem, for appellee A'Reesha C.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Mashae W. appeals the order of the separate juvenile court of Douglas County terminating her parental rights to her daughter, A'Reesha C. Upon our de novo review, we find clear and convincing evidence that termination is proper under Neb. Rev. Stat. § 43-292(7) (Reissue 2016) and that termination of Mashae's parental rights is in the best interest of A'Reesha. We therefore affirm the juvenile court's order.

## BACKGROUND

A'Reesha, born May 2020, was removed from Mashae's care when A'Reesha was 8 days old. A neglect petition was filed on the same day alleging that A'Reesha was a juvenile within Neb. Rev. Stat. § 42-247(3)(a) (Reissue 2016) due to the faults or habits of Mashae in that

- 1 -

Mashae's use of alcohol and/or controlled substances places A'Reesha at risk for harm, Mashae had left the child with an inappropriate caregiver, had failed to place herself in a position to parent, and had failed to provide appropriate care, support, supervision, and/or safety. A first appearance and protective custody hearing was held on May 22. Mashae entered a denial to the allegations and the court ordered A'Reesha to remain out of home.

Following an adjudication hearing on January 14, 2021, the court found all the allegations of the petition were true and adjudicated A'Reesha under § 43-247(3)(a). It further ordered that she remain in the custody of the Nebraska Department of Health and Human Services (DHHS) and ordered that Mashae engage in the following: complete a co-occurring evaluation and psychological evaluation, abstain from the use of illegal drugs or alcohol, submit to random drug and alcohol testing, participate in family support services, maintain suitable housing and a legal source of income, participate in supervised visitation with A'Reesha, and comply with all of her medical and neurology appointments and follow the recommendations of her medical providers. The court had been advised that Mashae lived alone, was epileptic, and that her seizures caused her to pass out and then she "wakes up in the hospital." She was on disability and unable to work because of the seizures.

A disposition hearing was held on March 3, 2021. The court was advised that Mashae had not yet completed a psychological evaluation due to the doctor's schedule, but a co-occurring evaluation had been scheduled. Mashae was participating in regular supervised visitation and drug testing. The court ordered Mashae to continue with all previously ordered requirements. The permanency objective was reunification and A'Reesha was to remain in DHHS' custody.

At a subsequent disposition hearing on May 5, 2021, Mashae was ordered to comply with all recommendations from her co-occurring evaluation and psychological evaluation, refrain from any and all alcohol and illegal substances, participate in agency supervised visitation, participate in weekly family support worker services, participate in and successfully complete a Level I outpatient treatment, and complete a neurological exam.

Following a review and permanency planning hearing in September 2021, Mashae was ordered to continue to see her neurologist on a regular basis and take all prescribed medication, refrain from the use of alcohol and illegal substances, participate in supervised visitation, and participate in weekly family support. St. Francis Ministries was ordered to obtain medical information regarding Mashae's seizure disorder and obtain recommendations from her therapist as to the necessity of Level I outpatient treatment.

In October 2021, Mashae was allowed to have unsupervised visits with A'Reesha in 3-hour increments. In late June 2022, however, the court reinstated supervised visitation based upon events that occurred at a June 15 visit. At that time, the DHHS case manager did an unannounced drop-in to the visit. Mashae was not home and had left A'Reesha with a relative at Mashae's apartment. The case manager observed Mashae drive up to the apartment, but Mashae did not have a driver's license and had been ordered not to drive. When confronted with her behavior, Mashae became upset and began arguing with the case manager. This caused A'Reesha's behaviors to escalate and the visit ended.

In June 2022, the court found no exception existed to the statutory requirement that the State file a termination petition once a child has been out of the parental home for 15 months of the last 22 months. See Neb. Rev. Stat. § 43-292.03 (Reissue 2016). On January 17, 2023,

A'Reesha's guardian ad litem (GAL) filed a motion to terminate Mashae's parental rights based upon § 43-292(2), (5), and (7). See Neb. Rev. Stat. § 43-272.01(2)(h) (Reissue 2016) (granting GAL authority to file termination petition). A hearing was scheduled for June 2023.

The evidence at the termination hearing revealed that family support services for Mashae began in June 2020. The services were provided to address the following problems: child-caregiver relationships, Mashae's medical needs, housing, income and finances, learning environment, parental mental health, parental physical health, supervision, discipline, child behavior, and transportation.

Haley Hirsh was the case manager assigned to this family from June 2020 until April 2022, and from December 2022 until the time of the termination hearing. She testified that at the time of A'Reesha's removal from Mashae's home, Mashae had tested positive for marijuana. DHHS was advised that Mashae was in an intimate relationship with A'Reesha's father who was a lifetime registered sex offender, and that Mashae had a seizure disorder but was not currently seeing a neurologist on a consistent basis. The seizures would result in her hospitalization and Mashae was living alone.

According to Hirsh, Mashae participated in supervised visitation with A'Reesha for the majority of the case; however, there was a period when she had unsupervised visitation which was later revoked. Mashae verified a legal source of income in that she was receiving disability payments. She also completed a psychological evaluation with Dr. Jennifer Linder in March 2021 and a psychological evaluation with a parenting assessment performed by Dr. Theodore DeLaet in the fall of 2022. Although Mashae initially tested positive for marijuana, she stopped using the drug and was routinely testing negative for illegal substances.

Family support services were provided by Boys Town beginning in June 2020 and continued until March 2023. During that time, Mashae obtained and maintained stable housing, obtained her driver's license, secured transportation, worked on her parenting skills, and got her seizures under control by seeing a neurologist and taking her medication. However, she did not achieve positive parenting or provide structure on a consistent basis for A'Reesha.

Throughout the case, Mashae continued to engage in behavior during visits with A'Reesha that caused the visitation workers concern. She experienced difficulty staying awake during visits, and even in the 2 months leading up to the termination hearing, visits ended early because Mashae would react inappropriately when A'Reesha would hit, spit, or throw things at Mashae.

Mashae and A'Reesha participated in child parent psychotherapy (CPP) with Carrie Hillebrandt beginning in December 2022. Despite training in positive parenting and use of timeouts to control A'Reesha's behaviors, at the time of the hearing, Mashae was still struggling to implement that training.

Hirsh related an incident in December 2022 when she did an unannounced visit at Mashae's home. She described that the house was very dark and messy. The visitation was occurring in A'Reesha's bedroom, which according to the family support worker, is where the visits always occurred. Mashae explained that she did not have any working lights in the living room, and she did not want A'Reesha "running around the house." Hirsh explained to Mashae that her house needed to be cleaned before another visit could occur because of the number and type of items that were strewn about that A'Reesha could access. Hirsh had not seen Mashae's house in such disarray during any of her announced visits.

According to Hirsh, A'Reesha needs permanency and although Mashae has participated in services, her progress has been slow. DHHS has continued concerns whether Mashae will be able to parent A'Reesha adequately and independently. Hirsh admitted, however, that Mashae had been actively engaged in CPP since December 2022, appeared to be bonded to A'Reesha, and was able to provide love and nurture to her. However, even 3 years into the case, Mashae was still being instructed on how to effectively use a timeout chair with A'Reesha, which was concerning to Hirsh.

Hanna Birkland was a visitation worker for Mashae and A'Reesha and also provided family support from approximately October 2021 to October 2022. The family had eight problem areas that were identified. Of the eight areas, Mashae achieved the general health requirement (seeing physicians and obtaining medications for her seizures), obtained her driver's license, and secured housing. She did not achieve positive parenting skills, maintain a routine for A'Reesha, or complete a budget. Birkland experienced consistent issues with Mashae scrolling through social media on her phone or falling asleep during visits, sometimes requiring the visits to be ended.

DeLaet, a licensed psychologist, completed a forensic psychological and parenting risk assessment on Mashae in November 2022 after having evaluated her on September 19. In addition to testing Mashae, DeLaet reviewed collateral information relating to how the case came to the juvenile court along with court orders and other evaluations that had been performed. Mashae revealed that she had some periods of heavy alcohol consumption and had been a daily cannabis user during some portions of her life. She disclosed that even after A'Reesha was removed from her home she continued to use substances. By the time DeLaet interviewed her, she was under active treatment for a seizure disorder that she developed as an adolescent. Because of the seizure disorder, she was on disability, but had worked for a few months at a fast-food restaurant in 2022 before she quit.

DeLaet diagnosed Mashae with borderline intellectual functioning, learning disorder with reading, unspecified level of depression, and two substance use diagnoses for alcohol and cannabis. In his parenting assessment, DeLaet identified the following risk factors: level of defensiveness or denial of Mashae regarding her problems, substance abuse, seizure disorder and its impact, and oppositional defiance. He was concerned with Mashae's relationship history because A'Reesha's father was a registered sex offender at the time Mashae entered into a relationship with him. He placed her at a moderate risk of engaging in future maltreatment of A'Reesha. He relayed that he was concerned that Mashae, due to her cognitive profile, might have problems applying information that she may know. He explained that attending a class does not guarantee that she learned it, understood it, remembered it, or could apply it.

Following the November 2022 assessment, DeLaet reviewed more recent collateral information including information on CPP, family support services, visitation notes, and court reports of January 2023, as well as older case reports from February, June, and August 2022. According to DeLaet, these documents supported his prior findings. DeLaet testified that he did not rely much on Linder's evaluation because she did not do any adaptive behavior testing nor did the parenting portion of the evaluation have any structure in which to apply the test score. Finally, Linder did not include a parent risk rating.

Gabbie Point worked with Mashae from November 2022 to March 7, 2023, providing both supervised visitation and family support. During the time that Mashae was receiving family

support from Boys Town (May 2020 through March 7, 2023), nine family problems were identified: child-caregiver relationships; general health; housing; income, finances; learning environment; parental mental health; parental physical health; supervision, discipline, child behavior; and transportation. According to Point, Mashae made minimal progress in the category of child-caregiver relationships because she continued to need constant prompting and reminding by family consultants. She also made minimal progress in the areas of income and financing due to her inability to maintain a budget, learning environment due to Mashae being tired during visits, and supervision, discipline, and child behavior due to her constant need for modeling and prompting to use the skills taught to her.

Point relayed the issues she observed while supervising visitation. They primarily involved Mashae failing to wash her hands after changing A'Reesha's diaper, being tired and falling asleep during visits, failing to follow a schedule, constantly being on her phone instead of interacting with A'Reesha, and an unclean house.

Betsy Miller was the child and family services supervisor who was assigned this case in June 2020. DHHS received a hotline call when A'Reesha was born because Mashae tested positive for marijuana and there were concerns due to Mashae's seizure disorder that she may not be able to care for an infant. There were also concerns regarding A'Reesha's father because he is a registered sex offender and there were many documented reports of him taking advantage of women with lower IQs for financial and sexual reasons.

Miller testified that she responded to safety concerns from hotline calls in May and June 2022. In May, DHHS received notification that during an agency supervised visit Mashae had "put her hand to A'Reesha's face to discipline her" with force similar to a slap. When the family support worker attempted to converse with Mashae about appropriate discipline, Mashae was not receptive to the feedback, so the visit ended. In June, DHHS received notification of a hotline call in which the caller reported that A'Reesha's father had been spending time and staying with Mashae.

At the time of trial, Mashae's visits were agency supervised with Mashae's mother also supervising one visit per week. Based upon Miller's involvement in the case, she testified that she remains concerned that despite Mashae being involved in family support services for quite some time, she continues to demonstrate an inability to implement the skills that have been taught to her. Specifically, Mashae has a hard time adjusting the plan for their daily schedules, nap time, potty training, and diaper changing without prompting from a family consultant. Mashae continues to demonstrate that she needs prompting during visits to create a stable and consistent environment for A'Reesha. There were numerous reports that A'Reesha would be returned to her foster parents without having had a diaper change during the visits supervised by Mashae's mother. This concerned Miller because it indicated that if Mashae is not getting reminders, she is not meeting A'Reesha's needs. Miller further testified that it is her opinion that A'Reesha is in need of permanency and that Mashae's parental rights should be terminated. She explained that she has

> been supervising this case since it transferred to ongoing services about three years ago, and during that time the concerns have been the same; that while it's very evident that Mashae loves her daughter and is fairly consistent with her services and visits, during those services she's not able to take the skills that have been provided to her, even when we've adjusted the services and implemented them to meet her where she's at developmentally, to meet mom where she's at developmentally, she continues to not be able to demonstrate

that she would be able to implement what she's learned as A'Reesha grows to keep her safe, to create a stable environment for her.

In a written order, the juvenile court found that the GAL had provided clear and convincing evidence that Mashae's parental rights should be terminated under § 43-292(2), (3), (5), and (7), and that it was in A'Reesha's best interests to do so. Mashae appeals.

ASSIGNMENTS OF ERROR

Reordered, Mashae assigns the juvenile court erred in finding that the GAL proved a statutory basis for termination of her parental rights by clear and convincing evidence and that terminating Mashae's parental rights was in A'Reesha's best interests.

STANDARD OF REVIEW

In Nebraska, the grounds for terminating parental rights are codified in § 43-292. That statute contains 11 separate subsections, any one of which can serve as a basis for termination when coupled with evidence that termination is in the best interests of the child. See, § 43-292; *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). It is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Mateo L. et al., supra*.

ANALYSIS

*Statutory Basis.*

In the present case, the GAL sought termination of Mashae's parental rights under § 43-292(2), (5), and (7). The juvenile court found that the GAL met its burden with respect to all of the statutory grounds alleged. The GAL agrees that the juvenile court erroneously found that § 43-292(3) had been met because that subsection was not included in the GAL's motion for termination of parental rights. Although Mashae assigns error to all the statutory bases upon which the juvenile court terminated her parental rights, we address only § 43-292(7).

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of the parent. *In re Interest of Mateo L. et al., supra*. In other words, if the 15-out-of-22 formula is met, § 43-292(7) is met. *In re Interest of Mateo L. et al., supra*.

Here, A'Reesha was removed from Mashae's care in May 2020, when she was 8 days old. She has never returned to Mashae's home. At the time the motion to terminate was filed in January 2023, A'Reesha had been in foster care for almost 3 years. Thus, the GAL presented sufficient evidence to satisfy § 43-292(7).

Having found sufficient evidence for termination under § 43-292(7), we need not consider the sufficiency of the evidence concerning the GAL's other statutory bases for termination. See *In re Interest of Mateo L. et al., supra* (where one statutory base has been established, an appellate court need not consider the sufficiency of the evidence concerning the other statutory bases for termination).

*Best Interests.*

Mashae assigns the juvenile court erred in finding that the GAL proved by clear and convincing evidence that it is in A'Reesha's best interests that Mashae's parental rights be terminated. We disagree.

Under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the best interests of the child. *In re Interest of Mateo L. et al., supra*. Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *Id*. This second hurdle is a high one for the State, since a parent's right to raise his or her children is constitutionally protected. *Id*. As we have stated before, the Due Process Clause of the U.S. Constitution would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *Id*. That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*.

Although the term "unfitness" is not expressly stated in § 43-292, we have said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. See *In re Interest of Mateo L. et al., supra.* In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing that has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id*.

Mashae argues that although she did not complete the entire case plan, she "was in substantial compliance" with it. Brief for appellant at 21. However, her supporting argument highlights why the juvenile court did not err in finding it was in A'Reesha's best interests that Mashae's parental rights be terminated. Mashae asserts that the juvenile court noted that she "was willing to participate in services" and that many witnesses supported the court's finding that she "substantially participated in court ordered services." *Id*. at 21-22. But "participation" in services is insufficient. A parent seeking to avoid termination of his or her parental rights must do more than merely comply with the court-ordered rehabilitative efforts; he or she must gain understanding of his or her problem and make progress in efforts toward changing his or her behavior. *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

Here, Mashae began receiving services in June 2020, but at the time of the termination hearing in June 2023 she was still having agency supervised visitation because of the need for direction and prompts on proper parenting in matters as basic as time-outs, naptime, and bathroom hygiene. Mashae continued to have difficulty staying awake, focusing on A'Reesha instead of playing on her cell phone, maintaining a clean house free from safety hazards, changing A'Reesha's diaper, and practicing proper hygiene. Hirsh, Point, and Miller all testified that Mashae had made minimal progress in obtaining her case goals and continued to experience difficulties staying awake and avoiding excessive cell phone use during her visits.

While we commend Mashae for her participation in court-ordered services, the record is replete with examples of her failure to internalize what was taught and put those skills to use. As articulated by DeLaet, "just attending a class does not guarantee that she learned it, understood it, remembered it, or could apply it." For over 3 years DHHS provided services to place Mashae in a position to parent A'Reesha to no avail. When a parent suffers from a personal deficiency or incapacity which has prevented, or probably will prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being, that parent is unfit. See *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). The evidence supports a finding that Mashae suffers from such deficiency or incapacity and is unfit to parent A'Reesha.

A'Reesha deserves permanency. Mashae's failure to internalize and implement the skills required by the court-ordered rehabilitation plan defeated her chance to be reunified with her daughter. At the time of the hearing, A'Reesha had been in the State's care for over 3 years. During that time, Mashae had not even progressed to being allowed unsupervised visitation with A'Reesha. Because much progress must still be made before Mashae would be trusted with A'Reesha's care and custody, A'Reesha would be left to languish in foster care for an unknown amount of time with no guarantee of reunification. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). We conclude that the GAL showed by clear and convincing evidence that termination of Mashae's parental rights was in A'Reesha's best interests.

CONCLUSION

Upon our de novo review of the record, we conclude that the GAL adduced clear and convincing evidence that termination of Mashae's parental rights was proper under § 43-292(7) and was in A'Reesha's best interests. We therefore affirm the order of the juvenile court.

AFFIRMED.